GIBSON, *Appellant*, v. OWENS.

Division One, March 25, 1893.

1. Municipal Corporation: STREET IMPROVEMENT: DAMAGE TO PROPERTY: CONSTITUTION. When property is damaged by establishing the grade of a street or by raising or lowering a grade already established, it is damaged for public use within the meaning of the constitution.

2. ———: ———: ———: ———. Macadamizing a street in a careful manner upon an established grade will not entitle the abutting owners to damages under the constitution.

3. ———: ———: ———: STATUTE. The act of the legislature approved March 28, 1885 (Laws, p. 59), providing for the ascertainment and payment of damages for grading and regrading streets and alleys of cities of the second class considered and *held,* not to apply where the street was brought to grade before the passage of the act, and no change of grade was made or contemplated.

4. ———: ———: ORDINANCE: CONTRACT. The grading of a street under one ordinance, and the macadamizing, curbing and guttering of the street under another ordinance passed on the same day may be done under one contract.

5. ——: ——: AWARDING CONTRACT: BIDDER. Under an ordinance requiring city contracts to be awarded to "the lowest reliable and responsible bidder who will sufficiently guarantee the performance of said work," a city engineer who has selected the lowest bidder may, where such bidder declines to enter into the contract and give the guaranty required, award the contract to the next highest bidder without readvertising for bids.

6. ——: ——: ESTOPPEL. Where all the jurisdictional steps which authorize a contract for a street improvement have been taken, a property owner, who has made no objection till the work has been completed and has received the benefit of it, is estopped in a suit on a special tax bill therefor to question the validity of the action of the proper officer in awarding the contract.

7. ——: ——. The fact that a contract for curbing and guttering a street requires the contractor to keep the same in good repair for six months after its acceptance is no objection to its validity, where, under the laws in force at the time, the cost of repairs of curbing and guttering was chargeable against the abutting owners.

*Appeal from Buchanan Circuit Court.*—HON. O. M. SPENCER, Judge.

REVERSED AND REMANDED.

*Porter & Woodson* and *Huston & Parrish* for appellant.

(1) The title to the streets vests in the city as trustee of the public with power to improve the same at the cost of the locality fixed by law. This is the exercise of the sovereign taxing power and is one with which the courts have nothing to do. Cooley on Taxation [1 Ed.] secs. 416, 452; *Keith v. Bingham*, 100 Mo. 300; *Farrar v. St. Louis*, 80 Mo. 379; *Garett v. St. Louis*, 25 Mo. 505. (2) The general rule obtains that tax bills are valid liens against the property, unless, in some material matter vitally affecting the rights of the local property owner, the law authorizing the taxation has been disregarded. *Sheehan v. Owens*, 82 Mo. 458; *Cole v. Skrainka*, 105 Mo. 309; *City of St.*

*Joseph v. Farrell*, 106 Mo. 442. (3,) In the absence of any charge of improper motive or collusion, an adver- tisement presumably in the interest of an all around completion of the work for the lowest obtainable price ought not to prejudice the men who in good faith did the work. *Alberger v. City*, 20 Atl. Rep. 988; *Matter of Ingraham*, 64 N. Y. 310; *Neenan v. Smith*, 60 Mo. 292. (4) Bids having been advertised for and received as an entirety no division could be made in the award of the contract. (5) Sheridan having refused to com- ply with his contract, the contract was rightly awarded to the next lowest responsible bidder. *Ross v. Stack- house*, 16 N. E. Rep. 501; *State, etc., v. McGrath*, 91 Mo. 386; *Sheehan v. Owens*, 82 Mo. 458. (6) The vality of the tax bill is not affected by the provision of the contract requiring the contractor to keep the curb- ing and guttering in repair for the stated period. (7) Under the pleadings and evidence in this case the defendant is estopped to deny the validity of the tax bills. *Sheehan v. Owens*, 82 Mo. 464; *Collins v. Camden*, 27 N. J. Eq. 294; 2 Dillon on Municipal Cor- porations [4 Ed.] sec. 924; *Ross v. Stackhouse*, 16 N. E. Rep. 501; *State v. Morristown*, 34 N. J. Law, 445; *State v. Patterson*, 40 N. J. Law, 244; *Wright v. Tacoma*, 19 Pac. Rep. 42; *Ritchie v. Topeka*, 38 Kan. 386; *People v. Utica*, 65 Barb. 1; 2 Herman on Estop- pel, secs. 1221, 1362.

*Hall & Pike* for respondent.

(1) The grading of the street was ordered by a distinct ordinance; was by the law chargeable against a separate and distinct taxing district and on a distinct and independent basis, and was thus charged in the tax bills sued on in this case. (2) The owners of the

abutting lots were entitled to have the damages ascertained and paid in accordance with the act of 1885. "When the statutory provision relates to prior proceedings immaterial in themselves, but contains negative terms, either expressed or implied, then such negative terms clearly show a legislative intent to impose a limitation, and therefore the statute becomes imperative and requires strict performance in the mode or manner prescribed." *Hersford v. City of Omaha,* 4 Neb. 351; See 1 Kent's Commentaries, 465; *Bladen v. Phildelphia,* 60 Pa. St. 464; *Pearce v. Monice,* 2 Adolphus & Ellis, 96. (3) All the tax bills in suit are void because the two improvements were let together as one improvement. The action of the city engineer in entering into a contract with plaintiff after having awarded the contract to Sheridan, because of the latter's refusal to sign the contract, was contrary to the charter and ordinances of the city, and the contract thus entered into was null and void. (4) These provisions of the charter and ordinances were mandatory, not directory, and a contract entered into by the city authorities contrary to them, was null and void. Burroughs on Taxation, p. 480; *Wells v. Burnham,* 20 Wis. 112; *Kneeland v. Milwaukee,* 18 Wis. 411; 1 Dillon on Municipal Corporation, sec. 466, and note; *Dickinson v. Poughkeepsie,* 75 N. Y. 65; *Nash v. St. Paul,* 11 Minn. 174; *Fulton v. Lincoln,* 9 Neb. 358; *State ex rel. v. Barlow,* 48 Mo. 17. (5) The tax bills in suit are a tax. One is not estopped to deny the validity of a tax by mere silence. *State ex rel. v. Railroad,* 74 Mo. 163; *Cameron v. Stephenson,* 69 Mo. 379. There is no estoppel in this case. *Keane v. Klanosman,* 21 Mo. 485; *Coggeshall v. Des Moines,* 41 N. W. Rep. 617; *Galbreath v. Newton,* 30 Mo. App. 394; *Perkinson v. McGrath,* 9 Mo. App. 26; *Tone v. Columbus,* 39 Ohio St. 281.

MACFARLANE, J.—This is an action on certain special tax bills for excavating Ninth street preparatory to putting down macadam and for macadamizing, curbing, guttering and putting in cross-walks.

There were three different classes of tax bills in suit, to-wit: 1. For grading the street exclusive of sidewalks. 2. For the grading of sidewalks. 3. For macadamizing, curbing and guttering. The defendant was the owner of a large number of separate lots abutting on the street improved, and there were separate counts in the petition for each lot, and a separate count on each tax bill of each class. It was agreed by the parties that one tax bill of each class against one lot should be considered and that all other bills correspond to some one of these three except as to amount and description of property.

The first count of the petition was on a tax bill for the cost of grading between two designated points exclusive of grading the sidewalk thereon, as provided by ordinance number 295, entitled an ordinance to grade Ninth street, etc., approved August 27, 1887. The bill was signed by the city engineer and was filed with the petition, and was the basis for the allegation of the petition. In the tax bill the engineer charged "that when such work was completed he computed the cost thereof, and apportioned it among the several lots to be charged therewith, according to the *values thereof* fixed by the city assessor, according to law, and charged each lot with its proper share of such cost; that after so apportioning and charging the cost of such work he made out this special tax bill according to such apportionment, and charge in favor of William E. Gibson, the contractor, to be charged against lot 8 in block 2, in South St. Joseph addition to the city of St. Joseph;

that said lot has been charged, as aforesaid, with $13.98, its proper share of such cost."

The total cost of grading under the contract was $2,018,17.

The second count was for grading for a sidewalk under the same ordinance charged against the same lot in favor of plaintiff Gibson and against defendant Owens, the due proportion being $2.17 of a total cost of $156.85 which was apportioned according to the frontage of the lots.

The third count was in favor of plaintiff for work done under ordinance number 296, approved August 27, 1887, providing for "macadamizing, curbing, guttering, etc.," Ninth street between the same points. In this bill it was charged that the cost of the work was apportioned among the several lots to be charged therewith according to the *frontage* of the property and against said lot 8 the sum of $147.92, its proper proportion of the whole, which amounted to $2,877.92.

Defendant by answer denied the validity of the tax bills upon the following special grounds:

1. That as the work of grading the street and of putting down the macadam, guttering, curbing, etc., was directed by separate ordinances, both having reference to the same street, and passed and approved the same day, they required, as matter of law, that bids for such work should have been separately advertised, and that bids having been asked for all the improvement, it rendered the tax bills all void.

2. That on bids so advertised for Regan Bros., being the lowest bidder on the item of excavating, the awarding of the contract to Gibson was such a violation of law as to invalidate the tax bills.

3. That Sheridan, who was the lowest all round bidder refusing to enter into contract with the city, or

give bond as required by the law and ordinances, the engineer had no power to award the contract to the plaintiff without readvertising, and that such action was void.

4. That the contract contains a provision that the contractor Gibson should keep the curbing and guttering on said work in good repair and in proper position for six months after the acceptance of the work, which increased the cost and rendered the tax bills void.

5. That both ordinances under which the work was done were void, as being in violation of the charter of the city pertaining to the grading of streets.

The reply charged that Ninth street was dedicated to the city as a public highway in 1858, and that grades were established prior to 1885. It also charged that defendant, by his conduct, was estopped to deny the validity of the tax bill.

It was shown upon the trial that St. Joseph was a city of the second class; that Ninth street was dedicated and its grade established prior to 1885; that the two ordinances were passed and approved on the twenty-seventh day of August, 1887, one for grading and the other for paving Ninth street; that each contained a section requiring the engineer to advertise for bids on the work, required respectively by the ordinances; that the engineer advertised for bids for the work ordered under both ordinances together, received joint bids, and awarded the contract for all the work upon an estimate for doing it all. The facts charged in the answer, as above stated, were shown to be true in substance.

There was no question as to the regularity in the assessment of benefits and apportionment of the cost.

Upon the pleading and evidence the court found and rendered judgment for defendant and plaintiff appealed.

I. It is insisted as an objection to the validity of the tax bill for "grading" that ordinance number 295, ordering that improvement, was passed in violation of the provision of an act of the legislature (Laws, 1885, p. 59) the first two section of which are as follows:

"1. No street, alley, or any part thereof, in any city of the second class, shall be graded or regraded except as hereinafter provided, unless the property owners to be disturbed thereby shall sign a petition therefor, in which each shall waive all claims for damages on account thereof.

"2. When any ordinance shall be passed ordering the grading or regrading of any street or alley, or any part thereof, the common council shall, in the same ordinance, determine and prescribe the limits within which private property is benefited by the proposed grading or regrading."

The sections immediately following these point out the details for assessment of damages and benefits to adjacent property owners caused by such "grading or regrading," and section 13 provides that after damages have been assessed and paid, "the city authorities may proceed to cause the grading to be done according to the ordinance."

It is not pretended by plaintiff that the petition required by this act was signed by the property owners as required, or that the other provisions of the act were in any manner complied with. Defendant, in answer to this, insists that the act of 1885 was only intended to apply to proceedings by the city, in the exercise of the power of eminent domain, in establishing the grade of a street or in changing a grade already established; that the city proceeded, in ordering the grading of Ninth street, under a provision of the charter, authorizing the work of grading to be done on a street the grade of which had been established prior to the

act in question, and that said act had no application. We think the purpose of the act as claimed by plaintiff correct.

Section 4781, Revised Statutes, 1879, gives power to cities of the second class, to which St. Joseph belongs, to grade and otherwise improve their streets at such time, and to such extent, etc., "as shall be provided by ordinance." The sections following point out the details for letting contracts, having the work done, and assessing and collecting benefits from adjacent property owners to pay for the improvements. The act of 1885 does not undertake to grant power to grade, but assumes that the power already exists, and that the preliminary steps up to and including the enactment of a proper ordinance had been taken. The second section of said act commences by declaring what shall be done in carrying out the requirements of the ordinance. Moreover the act makes no provision for doing the grading, but is confined to the assessment of damages consequent upon the grading or regrading of the street. 'Section 13 authorizes the authorities to proceed with the grading after the damages have been assessed and paid. The general statute at the time had no adequate provision for the assessment of damages, or compensation for the injury to adjacent property caused by the grading, and this act was intended to supply the omission.

If the street, as was undisputed, had previously been made to conform to an established grade, and no change of grade was contemplated or made, then there could have been no injuries to private property calling for compensation, and the act of 1885 was not brought into requisition, and compliance with its requirements was wholly unnecessary. "When property is damaged by establishing the grade of a street, or by raising or lowering the grade of a street previously established, it

is damaged for the public use within the meaning of the constitution." *Werth v. City of Springfield*, 78 Mo. 110; *Stewart v. City of Clinton*, 79 Mo. 603; *Sheehy v. Railroad*, 94 Mo. 579.

For ascertaining and providing for the payment of such consequential damages, the act of 1885 was clearly intended, not as a repeal of section 4781, but as supplementary to it. It cannot reasonably be contended that macadamizing a street in a careful manner upon an established grade would entitle abutting owners to damages. The city of course proceeded at its peril in making the improvement, without the assessment of damages and rendered itself liable for any injury to the property resulting from any change in the grade of the street, but the validity of the proceedings were not thereby affected. *Keith v. Bingham*, 100 Mo. 306.

II. It is argued by defendant with great earnestness and ability that the grading of the street, on the one hand, and macadamizing, curbing and guttering the same street between the same points, on the other hand, being ordered by distinct ordinances, and the cost thereof being chargeable against separate and distinct taxing districts, and on a distinct basis, were independent improvements, and should have been let under separate contracts, and therefore advertising for bids and awarding both classes of work under one contract was fatal to the whole proceedings, and the tax bills for both are void.

This contention has its foundation in the fact that under the charter the costs of grading a street are required to be apportioned against adjacent property, on each side of the street, in proportion to its assessed value, exclusive of improvements, to the center of the block, if the land is platted into lots and blocks, and, if not so platted, then to the distance of one hundred and fifty feet. These estimates are made upon property,

regardless of whether or not it fronts upon the street improved, while the cost of macadamizing is charged against property abutting upon the street in proportion to its frontage.

It may be true, as contended by defendant, that awarding one contract to the lowest all-around bidder for both improvements, may have resulted in making the charge upon defendant's lots somewhat greater for one improvement, and correspondingly less for the other; still the difference could have been but a trifle, which may have been more than compensated for in a general reduction made in bids on account of advantage gained in making both improvements at one time. Defendant does not point out any injustice done him by so awarding the contract, no fraud or collusion is charged and neither the charter nor ordinances of the city required the grading and macadamizing of the same street to be done under separate contracts. The construction of public improvements in a city whether at the cost of the public at large, or of those directly benefited by it, requires the application of business principles and the exercise of good judgment. In order that such affairs may be conducted in a rational manner, it is very necessary that much as to the details should be left to the sound discretion of those officers or agents to whom it may be entrusted. We are able to see no objection to the course pursued by the engineer; indeed, so far as appears, the necessary discretion left to him was wisely and honestly exercised.

*In the Matter of Ingraham*, 64 N. Y. 314, the building of two sewers under one contract and assessing the expenses thereof in one assessment, was held valid, though there was no express legislative authority to do so. The court in that case says: "The assessors had jurisdiction in this case, and having exercised their discretion there is no lawful ground for interfering

with their action.    Nor is any sufficient objection urged why two sewers might not be lawfully united and laid under one contract and assessments made at the same time for both of them.    No injustice appears to have been done to the petitioner on this account, and it furnishes no ground for vacating the assessments complained of."

In the case of *Alberger v. Mayor*, 64 Md. 8, an advertisement for Belgian blocks and the curb and gutter stones was not separately made with reference to contracts authorized to be made under an ordinance, it was held, that tax bills for improvements made by the use of these materials were not invalidated by the advertisement.

This court has never required a literal compliance with ordinances providing for such local improvements, much less should infallible judgment and the wisest discretion be required in matters of detail for which no express provision may have been made.    *Sheehan v. Owen*, 82 Mo. 458; *Cole v. Skrainka*, 105 Mo. 306.

III.    The next objection made to the validity of the tax bills is that the contract was not awarded to the lowest bidder.    It appears from the evidence that one Sheridan was the lowest bidder for the whole work, and the engineer upon opening the proposals awarded the contract to him.    Section 2 of the general ordinance, providing for such street improvements, requires all contracts to be awarded by the city engineer "to the lowest reliable and responsible bidder or bidders * * * who will sufficiently guarantee to the satisfaction of the comptroller the performance of said work under the superintendence, and to the satisfaction of said city engineer.    * * * In case the mayor and common council should, for any reason, reject all the bids offered, the city engineer shall proceed to advertise such work again, at the option of the common council."

It appears from the evidence that Sheridan failed and refused to enter into a contract and make the guarantee required, and thereupon the engineer gave the contract to plaintiff, the next lowest bidder, which was confirmed by the council.

We do not think the power of the engineer exhausted when he made the selection among the bidders of the one regarded the lowest. The reliability and responsibility of the bidder could not then have been determined. This preliminary selection was not a letting of the contract within the fair intent and meaning of the ordinance, but was necessarily conditioned upon compliance' on the part of the bidder with the other requirements. Upon the failure of Sheridan to enter into the contract and make the necessary guarantee, we think it was clearly within the discretion of the engineer to award the contract to another bidder. The right to reject the bids of all reliable and responsible bidders seems to have been reserved to the mayor and common council.

IV. The further objection is made that the contract required that the contractor should keep the curbing and guttering on the street in proper position and in good repair for six months after the acceptance of the work by the engineer. Under the laws in force at the time the cost of the repairs of curbing and guttering was chargeable against abutting property. That provision of the contract was beneficial to the adjacent property owners and for their protection, and does not affect the validity of the contract. The point has been so expressly ruled by this court *in banc*. *Morse v. City of Westport*, 110 Mo. 502. The judgment is reversed and cause remanded. All concur.