## JACKSON McGREW v. GRANITE BITUMINOUS PAVING COMPANY, Appellant.

### Division One, February 12, 1913.

1. **CONSEQUENTIAL DAMAGES: Changing Grade of Street: Ascertainment and Payment in Advance.** Under the provisions of the Constitution (Sec. 21, art. 2) declaring that "private property shall not be taken or damaged for public use without just compensation . '. . ; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested," the consequential damages to the owner of property abutting on a street arising from a change of the grade and the elevation of the street to the new grade are not required to be ascertained and paid to such abutting owner before the

work is done, if the work is done in pursuance of valid ordinances and other legislative authority; and a contractor, who performs such work in accordance with such valid ordinances, before such consequential damages are ascertained and paid, is not liable as a trespasser. Those words of the Constitution have no reference, so far as they relate to the payment in advance of damages, to such incidental disadvantages as may accrue to the abutting lot-owner from changing the grade of an established street. The damages which they require to be paid in advance are those resulting to the property-owner when a portion of his property is actually taken for a public use, and they may be twofold in character, namely, (1) damages for the land actually taken and (2) damages that may accrue to the property not taken by reason of the taking of the part over which the highway or railroad is constructed. [Disapproving *obiter dictum* in Rives v. City of Columbia, 80 Mo. App. l. c. 176, and distinguishing Soulard v. St. Louis, 36 Mo. 546, and Dooley v. Kansas City, 82 Mo. 444, cited in support thereof.]

2. ——: ——: **After Work Done: From Contractor.** The owner may recover damages to his abutting property resulting from the raising of an established street above its natural and established grade, after the street has been raised—from the city, if the work was done pursuant to valid ordinances; and from the contractor, and not from the city, if there was no ordinance. But if the work was done by a contractor in pursuance to valid ordinances and a valid contract thereunder, the property-owner cannot recover damages from him, for then the ordinances and contract are a complete shield against the recovery of any damages from him.

3. ——: ——: **Ascertainment and Payment in Advance: Statutes: Validity of Proceedings and Taxbills: Liability of Contractor.** The statutes pertaining to cities of the third class (Secs. 5861-5866, R. S. 1899) required the damages resulting to abutting property from a change in the grade of an established street, to be ascertained and paid before the doing of the work, and were not invalid because they in that respect outran the Constitution, for the Legislature has power to enact valid statutes which are not inhibited by the Constitution. And those statutes meant that unless the damages were so ascertained and paid, in the manner and at the time prescribed by them, the burden of the cost of the improvement fell on the city. But the validity of the proceeding was not affected by the fact that the damages were not ascertained and paid before the work was done, and hence a contractor who did the work in pursuance to valid ordinances and a contract, is not liable to the owner for damages resulting to abutting property from a change in the grade of the street.

Appeal from Randolph Circuit Court.—*Hon. Nick M. Bradley*, Special Judge.

REVERSED AND REMANDED (*with directions*).

*Sturdevant & Sturdevant* and *James A. Cooley* for appellant.

(1)   A contractor acting under a valid proceeding of the municipal authorities providing for a street improvement, is not liable to an abutting property-owner for consequential damages to his property resulting from bringing the street to the grade authorized by such proceeding; and, although the property-owner affected may be entitled to damages caused by such improvement under the clause of the Constitution fixing the liability of cities for "damaging property for public use," nevertheless such liability does not fall upon the contractor, but is that of the city alone.   Keith v. Bingham, 100 Mo. 300; Springfield v. Baker, 56 Mo. App. 637; Hickman v. Kansas City, 120 Mo. 116; Werth v. Springfield, 22 Mo. App. 12; Clemens v. Ins. Co., 184 Mo. 46.   (2)   Under section 21 of article 2 of the Constitution, providing for the liability of cities where private property is damaged for public use (prior to which there was no such liability, 107 Mo. 83), damage may be assessed and paid as provided by law, either before or after the improvement is made; the owner also having his remedy against the city in a common law action for damages; but a failure on the part of the city to assess and pay such damages before the improvement is made will not make the contractor, acting for the city under valid proceedings, liable for such damages.   And it is only when such improvement "disturbs his property or divests him of his proprietary right therein" that he is entitled to have his damages assessed and paid before the improvement is made.   Clemens v. Ins. Co., 184

Mo. 46. (3) A right created by the Constitution cannot be enlarged by legislation, and the remedy provided by statute for the enforcement of same is limited in application, strictly, to the right so created. Vanderburgh v. Minneapolis, 98 Minn. 329; Cooley, Const. Lim. (7 Ed.), p. 99. (4) The jurisdiction of the city over its streets and its power to improve them does not depend and is not conditioned upon a prior assessment and payment of consequential damages that may result to abutting property from the making of the improvement. Jurisdiction over and control of streets is given by Sec. 1495, R. S. 1889; Sec. 5858, R. S. 1899; Sec. 9254, R. S. 1909. Wheeler v. Poplar Bluff, 149 Mo. 36. (5) Consequential damages do not have to be assessed and paid prior to the doing of the work. Clemens v. Ins. Co., 184 Mo. 46; Haskell v. Denver T. Co., 23 Colo. 60; Vanderburgh v. Minneapolis, 98 Minn. 329; Selden v. Little Falls, 102 Minn. 358; Lorie v. Railroad Co., 32 Fed. 270; 15 Cyc. 781; Ins. Co. v. Heiss, 141 Ill. 35; Ligare v. Railroad, 160 Ill. 530; Manigault v. Springs, 199 U. S. 485. A number of authorities, from other States, cited by respondents are based upon constitutional provisions differing from ours in the respect that such constitutions specifically provide that the taking and damaging shall be "first paid." See following constitutions: Washington, sec. 16, art. 1; North Dakota, sec. 14, art. 1; Georgia, sec. 3, art. 1; South Dakota, sec. 13, art. 6; California, sec. 14, art. 1.

*Campbell & Ellison, Higbee & Mills, G. C. Weatherby* and *A. Doneghy* for respondent.

(1) The provisions of section 21, article 2 of the Constitution are to be liberally construed for the protection of the property-owner. Lewis Em. Domain (2 Ed.), sec. 232a; City v. Straight, 20 Colo. 13; Schaller v. Omaha, 23 Neb. 325; Omaha v. Kramer, 25 Neb.

492; Boyd v. U. S., 116 U. S. 616; Searle v. Lead, 10 S. D. 312; Harmon v. Omaha, 17 Neb. 548. (2) The words in question were intended to enlarge the right to compensation. Lewis Em. Domain (2 Ed.), sec. 232; Transportation Co. v. Chicago, 99 U. S. 642. (3) The words "injured, damaged or destroyed," were not used in vain and without meaning. Montgomery v. Townsend, 80 Ala. 489; Railroad v. Williamson, 45 Ark. 429; Reardon v. San Francisco, 66 Cal. 492; Denver v. Bayer, 7 Colo. 113; Rigney v. Chicago, 102 Ill. 64; Gottschalk v. Railroad, 14 Neb. 550; Omaha Co. v. Strunden, 22 Neb. 343; Johnson v. Parkersburg, 16 W. Va. 402; City v. Madox, 89 Ala. 181; Buffalo v. Straight, 20 Col. 13; City of Vicksburg v. Herman, 72 Miss. 211; Vandevere v. Kansas City, 107 Mo. 83; County v. Brower, 117 Pa. St. 647; Railroad v. Hall, 78 Tex. 169; Brown v. Seattle, 5 Wash. 35; Chicago v. Taylor, 125 U. S. 161. (4) Consequential damages for change of grade of street were intended by the Constitution to be first paid before the property can be disturbed or interfered with. Searle v. Lead, 10 S. D. 312; Reardon v. San Francisco, 66 Cal. 492; City v. Green, 67 Ga. 386; Moore v. City, 70 Ga. 611; Harmon v. Omaha, 17 Neb. 548; Rigney v. Chicago, 102 Ill. 64; Railroad v. Ayers, 106 Ill. 518; City v. Pollock, 141 Ill. 346; McElroy v. Kansas City, 21 Fed. 259; Brown v. Seattle, 5 Wash. 35; Chicago v. Taylor, 125 U. S. 161; Brighton v. Church, 96 Pa. 331; Werth v. Springfield, 78 Mo. 107; Householder v. Kansas City, 83 Mo. 488; Davis v. Railroad, 119 Mo. 180; Hickman v. Kansas City, 120 Mo. 110; Smith v. St. Joseph, 122 Mo. 643; Galveston v. Fuller, 63 Tex. 467. (5) The ascertainment and payment of damages for a change of street is a condition precedent to the right of the city to exercise the power. Searle v. Lead, 10 S. D. 312; Smith v. Sedalia, 152 Mo. 302. (6) Unless restricted

by the Federal or State Constitutions, the power of the Legislature to make any law that it sees fit is transcendent, as great as that of the British Parliament. Cass County v. Jack, 49 Mo. 196; State v. Wear, 145 Mo. 162; Ex parte Roberts, 166 Mo. 207; Cooley Con. Lim. (5 Ed.), sec. 87; Morrow v. Kansas City, 186 Mo. 675; Ex parte Berger, 193 Mo. 16. The provisions of Sec. 5861, R. S. 1899, are wise, and, if followed, will prevent a multiplicity of damage suits and will accelerate public improvement. Donovan v. Allert, 91 N. W. 441. "The right of eminent domain belongs to the State. The exercise of such is a matter entirely under the control of the Legislature, subject to such restrictions as are found in the Constitution. The necessity, the occasion, time, manner of its exercise are wholly legislative questions, with the exceptions just stated." Loomis v. Hartz, 131 N. W. 86; Musick v. Railroad, 114 Mo. 315; Railroad v. Evans, 85 Mo. 333. (7) The provisions of Sec. 5861, R. S. 1899, as to when and how the damages shall be ascertained, go to the remedy, and not to the right to the compensation guaranteed by the Constitution. Lewis Em. Domain (2 Ed.), sec. 245; Hickman v. Kansas City, 120 Mo. 118. (8) The Legislature may change the remedy whenever it sees proper so long as it does not impair the right given the property-owner by the Constitution. Lewis Em. Domain, sec. 245; Bornefelt v. Railroad, 180 Mo. 554; Sutherland Stat. Con., sec. 554; Cooley Con. Lim. (5 Ed.), sec. 443; Bronson v. Kinzie, 1 How. 312, 14 Curtis (U. S.) 629; 20 Am. & Eng. Ency. Law (1 Ed.), 871; Springfield v. Railroad, 67 Ill. 99; Chouteau v. Railroad, 122 Mo. 375; Southern Co. v. Stone, 174 Mo. 455. (9) If the Legislature has not made sufficient provision for the payment of consequential damages for a change of grade then it did not provide due process of law and could not confer the power. Chamberlain v. Elizabethtown, 41 N. J. Eq. 43; Chaffee's Appeal, 56 Mich. 244; In

re Manderson, 51 Fed. 501; Lewis Em. Domain (2 Ed.), secs. 341, 365; Elliott Roads and Streets (2 Ed.), sec. 197; Smith v. Sedalia, 152 Mo. 302. (10) This court has consistently held in construing section 21, article 2, Constitution, that consequential as well as actual damages must be first paid. St. Louis v. Hill, 116 Mo. 527; McMurray v. St. Louis, 138 Mo. 616; Leslie R. E. Co. v. St. Louis, 169 Mo. 227; Hickman v. Kansas City, 120 Mo. 110; Drainage Dist. v. Richardson, 237 Mo. 77; Smith v. Sedalia, 152 Mo. 302; Chapman v. Railroad, 144 S. W. 471.

WOODSON, J.—This case reaches us upon an order of transfer made by the Kansas City Court of Appeals, owing to a constitutional question lodged in the record.

Plaintiff owns a certain described lot in the city of Kirksville, Missouri, which said lot abuts on Jefferson street in said city for a distance of 108 feet. The lot is on the south side of said street. After properly charging the above matters, plaintiff's petition then thus proceeds:

"Plaintiff further states that the defendant, Granite Bituminous Paving Company, at all times hereinafter mentioned, was, and still is, a corporation organized and existing under the laws of West Virginia; that on or about the —— day of September, 1906, the defendant with force of arms wilfully and wrongfully entered upon said Jefferson street and constructed and erected a permanent embankment of stone, concrete and other durable materials twelve inches high and twenty-four feet wide in the center of said Jefferson street, along and in front of plaintiff's said lands, whereby the grade of said street was and is permanently raised twelve inches along the entire front of plaintiff's said premises above the natural surface thereof, whereby plaintiff's said premises have been damaged, and plaintiff has sustained dam-

ages in the sum of seven hundred and fifty dollars, for which he asks judgment."

Defendant is the contractor which did the work in improving Jefferson street in front of plaintiff's property. By its answer the defendant specially pleads certain ordinances, resolutions, and proceedings of the city of Kirksville relating to the establishment of a grade for Jefferson street, and for the improvement of such street and also relating to the contract with defendant and the approval and acceptance of the work, and then such answer thus proceeds:

"Defendant further alleges that all the acts and things done by it upon the street in front of the property described in plaintiff's petition were done according to, in pursuance of and under the authority of the ordinances, resolution and proceedings of the said city of Kirksville and its duly constituted authorities and in no other manner and that the said city of Kirksville in the passage of the said ordinances, resolution and proceedings acted within the authority conferred upon it by the laws of the State of Missouri; that all acts and things done by defendant upon the said street were done in strict compliance with its contract with said city and to the satisfaction of said city as aforesaid and that it is not liable to plaintiff in this action for the things complained of in plaintiff's petition.

"Defendant further alleges that the said plaintiff had full knowledge, actual and constructive, of all the proceedings had on the part of said city and the execution of said contract with the defendant and the doing of said work by the defendant upon said street, all as herein alleged; that during all of said time the plaintiff stood by without complaint or protest and without taking any steps to prevent the said city or the defendant from doing the things herein alleged and acquiesced in and ratified all the acts and proceedings on the part of the said city and all things done

by this defendant, and is therefore estopped to assert the claim set forth in his petition.

"Defendant further alleges that the ordinances, resolution and proceedings enacted by the authorities of the said city of Kirksville as herein alleged were all duly and legally enacted and that the same are now and have been, since the dates of their respective enactments as alleged, in full force and effect and remain unrepealed.

"The defendant further answering herein denies all the other allegations in plaintiff's petition contained.

"Wherefore the defendant, Granite Bituminous Paving Company, having fully answered, asks to be discharged with its costs in this behalf expended."

Reply was a general denial.

Trial was had before the court without the intervention of a jury and judgment rendered for plaintiff in the sum of three hundred dollars, from which judgment an appeal was granted to the defendant to the Kansas City Court of Appeals, and upon its motion the cause was as above stated certified to this court. Other material matters of pleading and proof will be noted in the course of the opinion.

I. Under the ordinance establishing the grade of Jefferson street, the street was slightly raised (something like twelve to eighteen inches in the center of street as claimed by plaintiff) in front of plaintiff's property. This it is charged interfered with ingress and egress, and also tended to keep surface water on the property. The lot sloped to the northeast, and when it is remembered that the street is north of the lot the situation is readily grasped.

Damages.

We are first called upon to determine the meaning of section 21 of article 2, Constitution of 1875. This section reads:

"That private property shall not be taken *or damaged for public use* without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, *the property shall not be disturbed or the proprietary rights of the owner therein divested.* The fee of land taken for railroad tracks without consent of the owner thereof shall remain in such owner, subject to the use for which it is taken."

We have underscored portions calling for our notice.

Plaintiff contends that his damages should have been assessed and paid to him, before the work was done by the city through its contractor, the defendant herein. That for this failure the proceedings were void, and the defendant liable in trespass, for such is the nature of this action.

Trespass.

Defendant contends that whilst the plaintiff can recover from the city his damages, yet the failure to have the same assessed and paid beforehand, does not invalidate the proceedings, and if the proceedings are otherwise regular, the contractor is not liable at all. If property is taken for street purposes there can be no question about the meaning of this constitutional provision. It has been too often passed upon. If, however, this constitutional provision contemplates the assessment and payment of damages of the kind here involved, prior to entering into the contract for the construction of the work, and prior to doing the work, then the proceedings have been unwarranted, and afford no protection to the contractor.

Damages to Property Taken.

Counsel for the plaintiff thus state their position in the brief: "Again, it has been repeatedly decided in this State that if a city proceeds to grade a street

to the damage of private property without first hav-
ing ascertained the damages as provided
by law, not only it, but all who join in
the trespass, are joint trespassers and
can be sued jointly or severally.''

**Consequential Damages Where No Property is Taken.**

Under this statement and in sup-
port thereof, we are cited to the case of Reed v. Peck,
163 Mo. 333. This case does not go as far as plaintiff
would have us say. There the city council of Colum-
bia by a mere resolution (not an ordinance) directed
a street to be graded, in consequence of which dam-
age accrued to the property of one Jacobs. Reed was
the administrator of the Jacobs estate, Jacobs hav-
ing died pending the appeal. The suit was against
the city, the contractors, the mayor and members of
the street committee. Verdict and judgment for the
plaintiff were sustained. However, we search the case
in vain for a discussion of the question we have here.
The only thing in that entire opinion lending coun-
tenance to the suggestion is thus stated: ''But as the
council had no authority to authorize the grading in
front of plaintiff's residence otherwise than by ordi-
nance, the resolution passed directing it was without
authority, void, and afforded no protection to those
who did the grading.'' This is far from saying that
although there was an ordinance, yet there would be
liability until the damages were first assessed and
paid. This case is no authority for plaintiff's conten-
tion upon this point.

A case from this court more nearly in point is
the case of Clemens v. Insurance Co., 184 Mo. 46. That
case involved property which did not abut on the
street being improved and which had been changed in
grade, yet it did involve the easement of ingress and
egress and the question of flooding a lot with water.
GANTT, P. J., discussed the decisions of this State and
also those of other states having the same constitu-
tional provisions. He concludes his discussion by giv-

ing an interpretation of our constitutional provision in this language:

"In our opinion the Colorado, Illinois and West Virginia and Louisiana courts correctly construe section 21 of article 2 of our Constitution, which is found in the constitutions of those states in practically the same words as in ours, and in holding that where the property of the citizen is not taken and his proprietary rights not disturbed, but the damage to his property is purely consequential, he is not entitled to have the same ascertained and paid before the proposed public work is done, and is not entitled to have the work done in pursuance of valid legislative and municipal authority enjoined until his damages are ascertained and paid, but that his remedy is one at law for damages.

"Having reached this conclusion we hold that whether plaintiff was an abutting owner or not he was not entitled to have the improvements which were being made pursuant to an ordinance of the city and clearly within its charter powers enjoined; that plaintiff has not brought himself within any recognized head of equity jurisdiction, and if he has any cause of action it is against the city for damages. It becomes unnecessary for us to determine other propositions urged by counsel."

Up to this Clemens case we had never passed in terms upon the precise question. It is clear that we do pass upon it in that case, and it is also clear that the rule we there announced is made applicable to abutting property-owners. The cases from other states cited and approved in the Clemens case, are cases where the question was raised by abutting property-owners. These cases also construe constitutional provisions such as we have.

In McMahon v. Railroad, 41 La. Ann. 1. c. 829, that court said: "It is true the Constitution, article 156, provides that 'Private property shall not be taken

nor damaged for public purposes without adequate compensation being first paid.' We will not say what might be the effect of this article on the right to bond if the act prohibited involved the taking of property, the value of which might be settled in advance. But in this case·there is no taking of plaintiff's property, which is not invaded or touched. The damages claimed are purely consequential in their nature, necessarily conjectural, and impossible of any accurate determination except after the construction of the road. To impose upon the parties the necessity of settling and paying such damages before proceeding with the work would be to require a manifest impossibility; and if such an injunction could not be bonded it would operate a perpetual bar to the construction of public works, which was certainly not contemplated by the Constitution.'' This was an action to enjoin the construction of a railroad in the street upon which the property of plaintiffs abutted.

To like effect is Railroad v. Domke, 11 Colo. 1. c. 255, whereat the Colorado court said:

''But where the fee of an individual is not sought to be taken, though an abutting lot-owner, he cannot enjoin the construction and operation of a railroad merely because the damages to his premises are not compensated in advance; provided the company act under sufficient legislative and municipal authority. [1 High, Inj. (2 Ed.), sec. 637.]

''It is contended that this doctrine ought not to be held applicable here, because of the peculiar phraseology of our Constitution. True, this instrument declares that private property shall not be 'damaged' without compensation. It does not, however, require that the damages, where property is not 'taken,' shall be computed and paid before the injuries complained of are inflicted. It provides that 'property shall not be needlessly disturbed, or the proprietary right of

the owners therein divested,' till remuneration be made. The proprietary rights of plaintiffs in the land are not divested, because such rights do not exist. There may be a disturbance of the easements connected with the use or enjoyment of their abutting lots; but needful disturbances of property may take place without prior compensation. [McClain v. People, 9 Colo. 190.] The city council, by adopting the right-of-way ordinance, determined conclusively, so far as the general public is concerned, including all interests of the plaintiffs common to the general public, that the anticipated disturbances were needful. But the disturbances mentioned in the Constitution are, in our judgment, disturbances of property sought to be taken, or, at least, property of the same owner out of which that desired is to be carved. We do not think that the clause in question was intended to require the prior assessment and payment of probable damages for disturbances, to take place in the future, of an easement connected with the property of a party, no part of which is taken, near or adjacent to the land condemned.''

The other cases cited by this court in the Clemens case, supra, are to like effect, and we will not further encumber this opinion with excerpts therefrom. To our mind the damages to be paid in advance, within the meaning of the Constitution, are those damages which arise from the taking of private property for public use, and these damages may be twofold in character, i. e., (1) damages for that portion of the property actually taken for use, and (2) damages to the remainder of the property which may accrue by reason of the taking of the part, and the construction of the railroad or highway over the part so taken. In other words the Constitution has no reference, so far as payment in advance of damages is concerned, to such incidental damages as may accrue to the abutting lot-owner for changing the grade of a

street. Such party has his right of action against the city which has authorized by ordinance the change of grade, at such time as the consequent injuries become apparent and susceptible of reasonable ascertainment. This would not be in advance of the doing of the work upon the newly-fixed grade line. We therefore conclude that plaintiff is in error in his contention as to the meaning of this section of our Constitution, and that the trial court was in error in following the contention of plaintiff upon this point, as somewhat darkly appears from the giving and refusing of declarations of law in this case.

II. By what we have said above we do not mean that consequential damages to property abutting a street occasioned by a change of grade **Consequential Damages Recoverable After Street Raised.** are not damages which fall within the constitutional provisions of section 21 of article 2, supra, but what we do mean is that they are not required to be assessed and paid in advance by reason of such constitutional provision. As said in Hickman v. City of Kansas, 120 Mo. l. c. 116:

"Prior to the adoption of the Constitution of 1875 (although the doctrine was vigorously attacked in Thurston v. City of St. Joseph, 51 Mo. 510, in the opinion by Judge ADAMS), it was uniformly held that any damage resulting to an abutting property-owner from a change of grade was *damnum absque injuria* for which the municipality was not liable, unless the injury could be shown to have resulted from the negligent or improper manner in which the work was done. [St. Louis v. Gurno, 12 Mo. 415; Taylor v. St. Louis, 14 Mo. 23; Hoffman v. St. Louis, 15 Mo. 656; Schattner v. City of Kansas, 53 Mo. 162; Imler v. Springfield, 55 Mo. 119; Wegmann v. City of Jefferson, 61 Mo. 55; Swenson v. Lexington, 69 Mo. 157; Stewart v. Clinton, 79 Mo. 603.]

"To uproot this doctrine, and provide for compensation when property is damaged, as well as when it is taken for public use, the eminent-domain clause in the Constitution of 1865 was amended, by the Constitution of 1875, to read as quoted, and since it has been considered the settled law in this State, that 'when property is damaged by establishing the grade of a street, or by raising or. lowering the grade of a street previously established, it is damaged for public use within the meaning of the Constitution. [Werth v. Springfield, 78 Mo. 107; State ex rel. v. City of Kansas, 89 Mo. 34; Householder v. City of Kansas, 83 Mo. 488; Sheehy v. Railway, 94 Mo. 574; Gibson v. Owens, 115 Mo. 258.]

"It is also well settled law that this article of the Constitution gives an absolute right and is self-enforcing, and although the Legislature may have enacted no law providing a mode for the ascertainment and payment of the compensation provided for, resort may be had by the party entitled to the right to any common law action which will afford him adequate and appropriate means of redress."

As said, prior to 1875 the words "or damaged" were not found in our Constitution, and therefore no right was given to recover these consequential damages. The Constitution of 1865 (article 1, section 16) read: "That no private property ought to be taken or applied to public use, without just compensation." It will be observed that this provided for no time for the payment of this just compensation. The Constitution of 1875 reads as we have herein quoted, but that we may have the two together for comparison and discussion we quote again:

"That private property shall not be taken *or damaged for public use* without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until

the same shall be paid to the owner, or into court for the owner, *the property shall not be disturbed or the proprietary rights of the owner therein divested.* The fee of land taken for railroad tracks without consent of the owner thereof shall remain in such owner, subject to the use for which it is taken."

It is the latter clause which has lead to the construction given it in the Clemens case, supra. The clause "the property shall not be disturbed or the proprietary rights of the owner therein divested," is construed to mean property actually to be taken, or the remainder of property actually damaged by the taking of a part thereof. And in giving this clause that construction it is further held that the previous clause "and until the same shall be paid to the owner" refers to that class of damages growing out of the actual taking of property as above limited and defined, and not to mere consequential damages such as are involved in this action.

In other words, the effect of the Clemens case, supra, and those from other states along the same line, is to divide the damages for which compensation is given by the Constitution into two clauses (1) those which must be assessed and paid beforehand, and (2) those which are recoverable after the work has been done, and the damages more easily ascertainable.

As suggested in the Louisiana case, supra, this appears to be the reasonable construction. These consequential damages cannot be easily ascertained until after the work is done, and the actual situation is made plain. So that whilst, as indicated by GANTT, P. J., in the Clemens case, there is language in a few of our cases (not called for by the cases) which might lead to a different conclusion, yet we think the construction we have given this constitutional provision is the one more consonant with the good sense of the thing.

For instance in Rives v. City of Columbia, 80 Mo. App. 1. c. 176, it is said: "It appeared on the trial that there was no ordinance (although the petition stated there was) authorizing the grading, and the city was therefore properly held not liable. [Werth v. Springfield, 22 Mo. App. 12.] But if there had been a valid ordinance directing the grading without first having taken measures to ascertain and pay the damage, the city would have been liable. [Soulard v. St. Louis, 36 Mo. 546; Dooley v. Kansas City, 82 Mo. 444.] In Werth v. Springfield, supra, and cases cited, there was no action taken of binding force on the city. But in the Soulard and Dooley cases the city acted in a manner binding upon it for the consequences of the trespass."

The Rives case was a street grading case, and the property was not actually taken. The first part of the quotation is all right, because the city only becomes bound by its ordinance. As to the appropriation of private property it can only speak through an ordinance. But this case does announce the broad doctrine that the consequential damages to property occasioned by changing the grade of a street must be first ascertained and paid, or the city and other parties doing the work under the ordinance would be liable as trespassers. It will be noticed that the court relies upon the Soulard and Dooley cases for its pronouncement of the law. In both of those cases there was an actual taking and appropriation of property for public use. What was said in those cases must be referred to the subject of the remarks. So we might call attention to other cases in which, as in the Rives case, unguarded language has been used in street grade cases.

III.  Plaintiff next contends that by statute these damages are required to be assessed and paid prior to

the doing of the work, and that the failure to comply with this statute invalidates the whole proceeding and renders the defendant liable in trespass. The statute relied upon by plaintiff is the last clause in section 5861, Revised Statutes 1899, the statute in force at the time of this proceeding. Such clause reads:

Advance Payment Required by Statutes.

"And when the grade of any street or alley shall have been once established by ordinance, it shall not be lawful to change such grade without making compensation to all persons owning real estate on such street or square, avenue, alley or other highway, who may be damaged by such change of grade, to be determined and governed in all respects, with reference to benefits and damages, as is provided in this article."

It will be noted that this section says that such damages are "to be determined and governed in all respects, with reference to benefits and damages, as is provided in this article." The laws we are now discussing relate to cities of the third class. Going to section 5864, Revised Statutes 1899, the manner of ascertaining damages for property actually taken is thus outlined:

"And it becomes necessary for the purpose to take private property described in such ordinance, just compensation shall be paid therefor to the owner or owners of such property, which the mayor shall be caused to be ascertained and assessed by a jury of six disinterested freeholders of the city, by proceedings prescribed by ordinance, and as in this article provided. The mayor shall have and exercise the power of a circuit court for conducting such proceeding, for the preservation of order and enforcing process issued in the course of proceedings, and may summon and compel the attendance of witnesses and jurors, and fine and commit any person guilty of misdemeanor or contempt, preside at the investigation

and pass on the competency of evidence, and instruct the jury on questions of law arising thereon. The city clerk shall issue process, and attend and record orders made by the mayor.''

In section 5865, it is said:

''When any ordinance provides for taking private property, as authorized in the preceding section, the council shall by ordinance, before any steps are taken to impanel a jury, determine and prescribe the limits within which private property shall be deemed benefited by the proposed improvement, and be assessed and charged to pay compensation therefor; and thereupon the city engineer shall make out and deliver to the mayor a statement, by plat, map or otherwise, containing a correct description of the several lots or parcels of property deemed benefited and to be assessed to pay compensation, as provided by ordinance as aforesaid, and containing also the names of the owners or claimants of such lots or parcels of property, or of any interest or estate therein, who may be such at the time of the passage of the ordinance providing for the taking of such property. The mayor shall thereupon, by order, appoint a day or place for impaneling a jury to ascertain the compensation for the property to be taken, and to make assessments to pay the same.''

In the next section, 5866, we find this language:

''The jury shall first ascertain the actual damages done to each person or corporation in consequence of taking their property for such purposes, without reference to the proposed improvement, as the just compensation to be made therefor; and second, to pay compensation, assess against the city the amount of benefit to the city and public generally, inclusive of benefits to any property of the city, and against the several lots and parcels of private property deemed benefited, as determined according to the last section, by the proposed improvement, the bal-

ance of such compensation—each lot or parcel of ground to be assessed with an account bearing the same ratio to such balance as the benefit to each lot or parcel of ground bears to the whole benefit to all the private property assessed. Parties interested may submit proof to the jury, and the latter shall examine, personally, the property to be taken and assessed. The verdict of the jury shall be signed by each juror and delivered to the mayor, and contain a correct description of each lot or parcel of property to be taken, the names of the owners or claimants, and the value thereof, and also the amount assessed against the city, together with a correct description of each lot or parcel of private property assessed, and the amount assessed against the same, and the names of the owners thereof.''

Then follows section 5868, with this among other provisions:

''The mayor shall, after the rendition of the verdict, report the same, together with the proceedings under the last section, to the council; and if the same be not confirmed within sixty days from the making of such report, the proceedings and verdict shall be void, and new proceedings may be instituted at any time after the expiration of eight months from the making of such report. If the council, by ordinance confirm the verdict and proceedings under the two preceding sections, within sixty days from the report of the mayor, an appropriation shall be made to pay such sum as has been assessed against the city; and the amounts assessed by the jury against the property shall be a lien on the several lots and parcels of property charged, from the day the ordinance providing for the improvement takes effect until paid, and, if not paid within thirty days, after the confirmation, shall bear interest at the rate of fifteen per cent per annum from the confirmation of the verdict, and shall be collected by the city as provided by ordinance by

suit or otherwise, as any other special tax, or by spe-
cial execution as follows.''

Said section 5861 provides that the damages there-
in mentioned shall be ascertained and paid for in the
manner prescribed for ascertaining and pay the dam-
ages done to property when taken under condemnation
proceeding for public purposes.

The defendant urges that said section is beyond
the scope of constitutional authority, and is, therefore,
null and void. That is, counsel for defendant insists
that said statute is unconstitutional for the reason
that it requires the city to assess and pay the damages,
in advance of the doing of the work authorized by
said section.

There is no doubt but what that statute does re-
quire said damages to be assessed and paid prior to
doing said work, nor is there, at this day, any doubt
as to the meaning of said constitutional provision
when applied to the class of damages involved in this
case; that is, it does not, as previously shown, require
this class of damages to be assessed and paid in ad-
vance to doing said work, nor does it prohibit the
Legislature from making such a requirement, if, in
its legislative wisdom it sees proper to so do.

In the absence of constitutional limitations the
Legislature is supreme and may enact any law which
in its wisdom it may deem best for the
Validity of residents of our municipalities and the
Statutes. people of the State at large. In other
words, the Legislature represents the sovereign peo-
ple, who have unlimited power to enact laws, except
as limited by the State and Federal constitutions;
and in the absence of such limitations all enactments
of the Legislature are valid and binding, however un-
reasonable and oppressive they may be. This is ele-
mentary.

Returning to said section 5861: Conceding that
it required the damages to be assessed and paid for

prior to the doing of the work mentioned therein, also
that it was not done, then how stands the case? In
our opinion that statute was enacted for the purpose
of placing this class of damages upon the same foot-
ing with those damages which are done to the remain-
ing property after taking a part thereof for public
purposes, as provided for in said section 21 of article
2 of the Constitution. In other words, to piece out the
Constitution and compel cities of the third class to
assess and pay both classes of said damages in the
same manner. This was for the purpose of correcting
a great injustice that had grown up in some of the
cities of the State, by their failure to
have the benefits and damages arising
from this class of work assessed and paid
for before the work was done. By such neglect, no
benefits were assessed against the property benefited
thereby, and consequently all damages did naturally
fall upon the city for doing the work contrary to law.
For instance, in the city of St. Joseph, the failure to
assess the damages and benefits done to property abut-
ting such improvements prior to making them, re-
sulted in alleviating all such property from the as-
sessment of all benefits received thereby and rendered
the city liable for all the damages done to all such
property in consequence thereof, which, if my mem-
ory correctly serves me, aggregated about $200,000.
Suits were brought therefor, and judgments were ren-
dered therein.

Liability
of City.

When those matters came before the circuit court,
the writer had the honor of presiding over Division
No. 1 thereof, and was in that way made familiar with
all the facts.

So unjust and oppressive did that matter become
to the city, and to the taxpayers thereof, the public
demanded relief therefrom, and in response thereto,
Major Samuel P. Houston, the then city counselor,
with the assistance of the writer, drew an amendment

to the charter of said city, section 5665, Revised Statutes 1899, which in so far as this case is concerned, was substantially the same as said section 5861 now is, and had it presented to the Legislature at the session of 1903. That section was first enacted in 1885. [Laws 1885, p. 59.] On February 10, 1903, that section was so amended as to read as follows:

"No street, alley or other public place in any city of the second class shall be graded so as to change the existing grade thereof, unless the property-owners to be affected thereby petition therefor and waive all claim to damages on account thereof, or unless such damages shall be first ascertained and paid as hereinafter provided, and any special taxbills issued for grading in violation of this law shall be void." [Laws 1903, p. 74, sec. 2.] This act is now section 9050, Revised Statutes 1909.

By an examination of said section 5665, it will be seen that the amendment of 1903 consisted of the provision declaring the taxbills issued for work done in violation thereof should be null and void.

The judgments for the $200,000 damages against the city of St. Joseph were rendered notwithstanding the existence of section 21 of article 2 of the Constitution, and section 5665, Revised Statutes 1899, for the reason that the circuit court followed the rulings of the court in the case of Keith v. Bingham, 100 Mo. 300, and the numerous cases following it.

In the case of Gibson v. Owens, 115 Mo. 258, the first case which raised the question as to the validity of taxbills issued in violation of said section of the charter of the city of St. Joseph, the circuit court held them invalid, but upon appeal to this court, the judgment of the circuit court was reversed, and in doing so the court used this language:

"For ascertaining and providing for the payment of such consequential damages, the Act of 1885 was clearly intended, not as a repeal of section 4781,

but as supplementary to it. It cannot reasonably be contended that macadamizing a street in a careful manner upon an established grade would entitle abutting owners to damages. The city of course proceeded at its peril in making the improvement without the assessment of damages, and rendered itself liable for any injury to the property resulting from any change in the grade of the street, but the validity of the proceedings was not thereby affected. [Keith v. Bingham, 100 Mo. 306.]''

And in the Keith-Bingham case, supra, BARCLAY, J., in speaking for the full court, used this language:

''It is claimed by defendant that the taxbills in suit were issued in violation of that section of the Constitution which declares 'that private property shall not be taken or damaged for public use 'without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed.' [Constitution 1875, art. 2, sec. 21.]

''Looking at this defense from the most favorable standpoint, it is evident that it is untenable. The section of the Constitution just quoted refers to, and is intended to regulate, the exercise of the right of eminent domain, whereas special assessments for local improvements, such as the taxbills before us, are referable to, and sustainable under the taxing power. This distinction is well recognized both here and elsewhere in the United States. [Garrett v. St. Louis (1857), 25 Mo. 505; Lewis on Eminent Domain, sec. 5.] If the taxing power has been called into play in the mode required by law for the purpose of paying for a local improvement, such as paving or grading a street, it is no defense to a bill issued therefor to say, as is said here, that the street, or the improve-

ment, damaged and did not benefit the property, though, if such were the fact, the party injured might have his action (on a proper showing) under the Constitution for such injury.''

This language was quoted with approval in the case of Drainage District v. Richardson, 237 Mo. 49, l. c. 71. The same doctrine has been repeatedly announced by this and other courts. See cases cited in last case.

After the decision in the Gibson-Owens case, supra, the judgments against the city of St. Joseph began to pile up, which called forth the legislation previously mentioned.

In the light of this legislation, and the decisions of this court regarding such damages, I am unable to understand how it can be logically contended that work of this character, done in the streets of a city of the second or third class, over which it has exclusive possession and control, done in pursuance to ordinances duly enacted, is illegal and wrongful, when this and all other courts so far as I know, hold that the taxbills issued in payment of said work are valid and enforceable, notwithstanding the damages were not first ascertained and paid for.

While I have no doubt whatever as to the constitutionality of section 5861, Revised Statutes 1899, and believe as previously stated, that it was enacted to piece out the Constitution in the manner before stated, as far as was possible, yet I do not think it has any greater or more binding force in regard to consequential damages to property from street improvements, than section 21 of article 2 of the Constitution has in reference to damages incident to the remaining property left after taking a part thereof, under section 21 of article 2 of the Constitution, for public purposes.

Both require such damages to be first ascertained and paid, but neither says the work of making such improvements is illegal or wrongful or that it should

not be paid for, in the absence of a statute similar to the amendment of the charter of the city of St. Joseph, or rather of the charter of cities of the second class.

In the Gibson-Owens case, supra, it was expressly held, that, notwithstanding section 5665, which is fully as broad and sweeping as is section 5861, the statute here under consideration, such improvements "are referable to, and sustainable under the taxing power," and were therefore lawful, and that the taxbills issued in payment thereof were valid and collectible.

In fact, the courts of this State, and of others, uniformly hold that notwithstanding said constitutional and statutory inhibitions, street improvements made in violation thereof are legal and that taxbills issued in payment thereof are valid, and enforceable, but add, as in the language of this court in the Gibson-Owens case, page 267, "The city of course proceeded at its peril in making the improvement without the assessment of damages, and rendered itself liable for any injury to the property resulting from any change in the grade of the street, but the *validity of the proceedings were not thereby affected.*"

Liability of Contractor.

If that is a correct enunciation of the law of the subject, of which there is no question, then how can it be that the contractor who did the work in obedience to the ordinances of the city, is liable for the damages resulting from making the improvements? The mere asking the question, answers it in the negative.

Neither the framers of the Constitution nor the lawmaking body of the State entertained any such idea when said section 21 of the Constitution was framed, or when said section 5861 was enacted.

Both were intended to secure to the property-owner his property and property rights, by prohibiting it from being taken or damaged until he was paid therefor, which clearly means that he has the unques-

tionable right to resort to injunctive remedies to stay the hand of the city until the property taken is paid for and compensation made for the damages. that would be done; and the latter also for the purpose of assessing the benefits and damages done by the improvements against the various pieces of property abutting the improvements.

If there was a charter provision of the character of section 5861, Revised Statutes 1899, in force in the city of St. Louis, at the time the case of Clemens v. Insurance Co., supra, was tried, Judge GANTT did not refer to it in that case. Had there been such, and had his attention been called to it, in the light of the cases cited, the conclusions reached therein, would, in our opinion, have been quite different. But be that as it may, we are firmly of the opinion that neither said constitutional provision, nor said statutory enactment, was designed to make unlawful the work and improvements, made on the streets of the city of Kirksville, in pursuance of ordinances duly enacted. Had that been the design, there would have been some such provision found therein as that contained in the amendment of the charter of the city of St. Joseph.

If the plaintiff's property was being damaged by the improvements being made, then he should have enjoined the city from proceedings with the work, or have sued the city for the damages done, just as was done in the case of Householder v. Kansas City, supra, and many other cases of like character, and especially those against the city of St. Joseph, and should not have stood gently by until the work was done, and then sue the contractor who in no manner or form touched his property or damaged it, for the reason that he was acting for the city, and not for himself. The ordinances thereof, and his contract made in pursuance thereof, is a perfect shield against any and all litigation that has or may be instituted against him on that account.

There are a number of other questions presented and discussed in briefs of counsel, but the view we have taken of the case renders it unnecessary for us to pass upon any of them.

We are, therefore, of the opinion that the judgment should be reversed and remanded to the circuit court with directions to proceed with the case, as herein expressed.

It is so ordered. All concur, except *Valliant, C. J.*, absent; *Graves, J.*, concurs in an opinion to be filed.

Decision rendered December 31, 1912. Motion for rehearing filed; motion overruled February 12, 1913. No opinion by *Graves, J.*