STATE EX REL. J. BECKER, MARY SCHULTE, WILLIAM ODENBACK and ISAAC W. PERCIVAL, Relators, v. WELLSTON SEWER DISTRICT OF ST. LOUIS COUNTY, a Public Corporation; BOARD OF SUPERVISORS of said district, ALEXANDER E. RUBELING, President; ALEXANDER E. RUBELING, JESS M. BARNETT, EDWARD A. LAUMANN, Supervisors and H. O. HENDRICKS, Secretary of the Board of Supervisors.—58 S. W. (2d) 988.

Court en Banc, March 21, 1933.

548

*Elliott W. Major* and *Jesse L. Harnage* for relators.

*Harry E. Wiehe* for respondents.

*John E. Mooney, Orla M. Hill* and *George Barnett, amici curiae.*

ELLISON, J.—This is an original proceeding in mandamus to compel the respondent board of supervisors of the Wellston Sewer District of St. Louis County to proceed with the organization thereof in accordance with the provisions of Chapter 65, Revised Statutes 1929, enacted by Laws 1927, page 439. This act was repealed by Laws 1931, page 355. During the intervening four years certain steps had been taken toward the organization of the district, but with the repeal of law under which it was created the board of supervisors refused to go further. The relators, who are property owners and taxpayers in the district, contend the organization had progressed to a point such as gave them a vested right to have the sewer project carried out and they say that right was violated by the repealing statute. For this and numerous other reasons they maintain that Laws 1931, page 355, is unconstitutional. These questions are presented in relators' petition for our writ and respondents' demurrer thereto.

The 1927 law, authorizing the formation of the district, applied to all counties having a population of 75,000 or more. It provided for the filing of a petition for incorporation in the circuit court, the giving of notice by publication, the hearing of objections, and the granting of a decree of incorporation if the court found sewage disposal necessary or desirable in the designated territory. Next, the court was required to appoint a board of three supervisors and these in turn a chief engineer who was to formulate a plan for the disposal of sewage and storm waters, making such surveys, maps and profiles as might be necessary. This plan being adopted by the board of supervisors, on their petition the circuit judge was to appoint commissioners who should appraise the land proposed to be taken for the sewer project and assess the benefits and damages accruing to the lands and property in the district by reason of the

execution of the sewer plan. They were further required to estimate the cost of the contemplated sewer improvements, including land acquired or condemned and the expense of organizing and administering the district.

All this was to be embodied in a report filed in the circuit court, of the filing of which the law required the circuit clerk to give two weeks' notice by publication. The sewer district and the owners of land and property therein were allowed to file exceptions to this report; and the court was summarily to hear and determine them. If it appeared that the estimated cost of the sewer project would be less than the adjudicated benefits the commissioners' report, if and as so modified, was to be approved; if the cost exceeded the benefits the district was to be dissolved as soon as all costs incurred thereto had been paid. To defray these preliminary expenses the board of supervisors was authorized to levy a uniform initial tax of ten cents per square of 100 square feet, and a further uniform tax if necessary for that purpose.

The relators' petition alleges all the foregoing steps were duly taken, the Wellston Sewer District having been incorporated by decree of the St. Louis County Circuit Court on February 11, 1929; that a sewer plan was worked out and adopted, in the course of which and with administrative expenses included an indebtedness of $141,-468.97 was incurred; that to pay these expenses a uniform tax of ten per cent per square was levied, amounting to nearly $98,000, and thereafter a further tax of eight cents per square totaling about $78,000, all of which constituted a lien on the land in the district; that commissioners were appointed who assessed the aggregate benefits from the project at $4,585,845 and the cost at $2,600,000; that of the foregoing assessed benefits the amount charged to the property of the relators was $1721; that the report of said commissioners was filed in the Circuit Court of St. Louis County on May 27, 1931. The repealing statute had been passed and approved twenty-six days before, on May 1, 1931, but without an emergency clause, as a result of which it did not become effective until September 14, 1931. Due notice of the filing of the report was given by publication, as required by the 1927 law.

Relators further allege that by reason of the facts above recited it became the duty of the respondent board of supervisors to have said commissioners' report and objections thereto heard and determined by the circuit court in order that it might be ascertained whether the benefits would exceed the cost of executing the sewer plan; that it is the belief of relators, and they aver, such would be the judgment and conclusion of the circuit court, and that as a result construction of the drainage improvements could proceed. But relators further plead the respondent supervisors refuse to carry on said court proceedings

after demand thereto and are liquidating and dissolving said sewer district under and by virtue of said repealing statute, Laws 1931, page 355.

Next, and finally, the relators assert they have a property interest as landowners in the field notes, engineering data and sewer plan of the district and in the $4,585,845 benefits assessed, particularly in view of the uniform taxes levied and the commissioners' assessment of $1721 against their own lands therein; that they have, furthermore, certain personal rights; that all of these were acquired under laws valid and subsisting at the time, to-wit, the 1927 law now appearing as Chapter 65, Revised Statutes 1929; and that said rights and interests vested before the enactment of said repealing statute in 1931; and that the latter is void and unconstitutional insofar as it attempts or purports to deprive them of the benefits of said sewer district.

The 1931 law, Laws 1931, page 355, thus assailed, contains only one paragraph and provides that certain enumerated sections of the Revised Statutes of Missouri 1929, "being all of chapter 65 of said statutes, be and the same are hereby repealed." Then follows a proviso "that all of the provisions of the law hereby repealed shall continue in force for the purpose of paying all outstanding and lawfully incurred costs, obligations and liabilities of all sewer districts, but no additional costs, obligations or liabilities shall be created except such as are necessary to pay such costs, obligations and liabilities heretofore incurred or necessary to the winding up of the affairs of such districts." The law next goes on to say that "the effect of this repeal as to each and every such district shall be the same as if the circuit court had, under the provisions of Section 11062, Revised Statutes of Missouri, 1929, found that the estimated costs of works and improvements exceed the estimated benefits." Then follows a final proviso "that said repeal shall not cause any suit pending against any such district or any of its officers to abate, nor shall it affect any judgment heretofore or hereafter rendered against such district and its officers or any of them."

The specific assignments made in attacking the constitutionality of the 1931 act, just summarized, are that it offends against the following provisions of the State and Federal Constitutions for the following reasons: (a) Section 4, Article II of the Constitution of Missouri, in that it fails to promote the general welfare of the people and deprives the residents and landowners of the sewer district of the natural right to life, liberty and the gains of their own industry;

(b) Section 15 of said Article II, in that it impairs the obligation of contracts and is retrospective in its operation;

(c) Section 21 of said Article II, in that it takes and damages private property for public use without just compensation;

(d) Section 30 of said Article II, in that it deprives the relators of their property without due process of law;

(e) Article III, in that the General Assembly, by repealing the 1931 law and declaring its effect should be the same as if the circuit court had found the estimated cost of drainage improvements affected thereby exceeded the estimated benefits, assumed to exercise functions exclusively judicial;

(f) Section 2, Article IV of the Constitution of the United States, in that it denies to the relators, as citizens of this State, the privileges and immunities granted to citizens of the several states;

(g) Section I of the Fourteenth Amendment to the Constitution of the United States, in that it abridges the privileges and immunities of the relators as citizens of the United States, deprives them of their property without due process of law, and denies to them the equal protection of law.

All the foregoing assignments are grouped around the central thought that the relators have vested property interests and inalienable rights in the Wellston Sewer District which would be destroyed by the repeal of the law under which it was created and by a dissolution of the sewer district. In addition to these assignments the relators contend further with respect to the operative effect and mechanics of the repealing statute, that it is in conflict with the following provisions of the State Constitution for the following reasons:

(a) Section 28, Article IV, in that the title of the act is defective;

(b) Section 34, Article IV, in that the act, while purporting to be a repealing statute, is in effect an amendment of the 1927 law, and was not passed as said section of the Constitution provides;

(c) Subdivisions 1, 32 and 33 of Section 53, Article IV, in that it is a local and special law impairing tax liens, usurps the functions of a general law in a situation to which the latter could be made applicable, and purports to operate only through the partial repeal of the former general law of 1927;

(d) Section 3 of Article X, in that it authorizes a tax not levied and collected for public purposes only, since it indirectly imposes a tax for the dissolution of sewer districts, which is not a public purpose or of aid to any governmental agency;

(e) Section 10, Article X, in that the State by and through the act attempts to impose a tax upon the sewer district and inhabitants thereof for local sewer purposes.

 I. Looking first to the basic question in the case—whether the relators have any vested or inalienable rights in the Wellston Sewer District which are violated by the repealing act of 1931. We think it very clear they have not; if it were otherwise the conclusion would necessarily follow that the State is powerless to dispense with

such agencies once they are incorporated and have passed through the initial stages of organization, no matter what the change in conditions may be. That they are governmental agencies created through an exercise of the police power is well established. It was on this theory that the sewer district law of 1927, here involved, Chapter 65, Revised Statutes 1929, was sustained within a year after its enactment, State ex inf. Atty.-Gen. v. Curtis, 319 Mo. 316, 4 S. W. (2d) 467; and the same has been repeatedly held with respect to drainage districts. These have been classified as "public corporations and governmental agencies exercising exclusively governmental functions," Max v. Barnard-Bolckow Drainage District, 326 Mo. 723, 728, 32 S. W. (2d) 583, 585; and as municipal corporations, Honey Creek Drainage District v. Farm City Inv. Co., 326 Mo. 739, 750, 32 S. W. (2d) 753, 757; State ex rel. Hansgen v. Allen, 298 Mo. 448, 456, 250 S. W. 905, 906.

Relators do not dispute that the enactment of the 1927 sewer district law was a valid exercise of the police power; on the contrary they affirm it was; but they say the *repeal* of the law in 1931 was not. In other words their position logically seems to be that if a law is passed as a police measure actually or presumptively advancing the public welfare, then the repeal of that law is at least *prima facie* detrimental to the public interest and not a lawful exercise of police power. They are not contending merely that the legislative discretion was exercised arbitrarily and abusively in this particular instance, which would call for a detailed statement of the facts. They are standing on a petition wherein they allege only the enactment of the 1927 law, the preliminary proceedings taken under it, the repeal, and, among other things, that the repeal *destroyed* governmental agencies thereby serving no public purpose.

If we correctly understand relators' position, they are clearly in error. Since the sewer districts formed under the 1927 law were governmental agencies exercising police power delegated by the State, the power could be withdrawn and they could be changed or abolished at the will of the General Assembly, insofar as such action would not violate the Constitution. As was said in In re Birmingham Drainage District, 274 Mo. 140, 156, 202 S. W. 404, 409, speaking of statutes applicable to drainage districts: "The right to enact these statutes includes the right to repeal or modify them or limit their application in any manner not inconsistent with some provision of the Constitution limiting the legislative power in that respect." The views of successive legislatures may differ, Koshkonong Mud Creek Drainage Dist. v. Bodeman, 197 Wis. 261, 267, 221 N. W. 864; or economic and other conditions may change, Houck v. Little River Drainage Dist., 248 Mo. 373, 391, 154 S. W. 739, 743. The repeal of a law enacted in the exercise of the police power undoubtedly amounts to a legisla-

tive declaration that paramount considerations of public welfare call for its abolition. The 1931 statute was as much an exercise of police power as the law it repealed. If, therefore, the relators have any vested or inalienable rights in the Wellston Sewer District they must be such as will stand against the State's exercise of that sovereign power, which the Constitution of Missouri says shall never be abridged, Section 5, Article XII.

The relators have invoked Sections 4, 21 and 30, Article II of the State Constitution, and Section 1 of the Fourteenth Amendment, United States Constitution, all on the theory that they have property rights in the sewer district through their ownership of land therein, which will be taken or damaged without just compensatio ι and due process of law if the sewer project be abandoned. Speaking first of these and particularly with reference to said Section 21. Article II, it has long been the law of this State that under tha⁺ section payment of compensation in advance is required only when the landowner's property is disturbed or his proprietary rights divested—when something in the nature of a physical invasion is contemplated. For consequential damages he is relegated to an ordinary action at law if no special procedure is provided. [Tremayne v. St. Louis, 320 Mo. 120, 130, 6 S. W. (2d) 935, 939; Blackwell v. City of Lee's Summit, 326 Mo. 491, 496, 32 S. W. (2d) 63, 65.] This necessarily means that the proceedings by which consequential damages are inflicted are not void but *valid*: They are the very basis of his action for damages.

The damages suffered by the relators here, if actionable at all, are wholly consequential. It is said in McGrew v. Granite Bituminous Paving Co., 247 Mo. 549, 562, 155 S. W. 411, 414, and the Blackwell case, supra, 326 Mo. 1. c. 497, 32 S. W. (2d) 1. c. 66, that *all* damages to which the constitutional provision refers are consequential except (1) those resulting from the actual taking of land; (2) and those occasioned to the remainder of a tract by the taking of a part thereof. From this it follows that the relators are in no position to contend the repealing act of 1931 is void and unenforceable as to them because an abandonment of the sewer project would damage their property interests. They have not suffered and will not suffer other than consequential damages. What has just been said applies also to relators' kindred contentions that they are being deprived of their property and the gains of their own industry without due process of law, in violation of Sections 4 and 30, Article II of the State Constitution, and Section 1, Fourteenth Amendment, United States Constitution. If they have suffered damage which is actionable, the courts are open to them. Of this we shall say more presently.

Relators also contend they have certain inalienable rights more intangible in nature, such as the right to life, liberty, health

and the privileges of citizenship, which have been denied them by the repeal of the sewer law in violation of the several sections of the State and Federal Constitutions cited earlier in this opinion. And they say they have a contract right requiring the execution of the sewer plan, which the repealing act impairs in violation of Section 15, Article II of the State Constitution. This brings us to a consider· ation of the rights of citizens in their broader aspect as against a valid exercise of the police power.

The State has the power to enforce reasonable police regulations measurably affecting the liberties of people not alone with respect to their personal conduct and rights, but with respect to the use and enjoyment of their property as well—and this without the allowance of compensation for such restrictions. As against these regulations the people have no vested rights, no constitutional immunity by contract or otherwise. Thus it was held in State ex rel. Cadillac Co. v. Christopher, 317 Mo. 1179, 298 S. W. 720, that the zoning law of the city of St. Louis was constitutional though landowners were left uncompensated. Bellerive Inv. Co. v. Kansas City, 321 Mo. 969, 13 S. W. (2d) 628, ruled an ordinance forbidding the keeping of more than three automobiles in any building below quarters used for living or sleeping purposes did not deprive the property owner of "any right or privilege guaranteed by the Constitution, State or Federal." And in Kingshighway Presbyterian Church v. Sun Realty Co., 324 Mo. 510, 24 S. W. (2d) 108, involving a St. Louis city ordinance which prohibited the location of a gasoline filling station within 250 feet of a church, this court said "every citizen holds his property subject to the valid exercise of the police power," and on that theory declared a building permit issued before the ordinance went into effect gave the defendant no vested right to build the station, although he had contracted for the erection thereof, purchased material, and commenced work. The rule has been expressly applied to contract rights. [Tranberger v. C. & A. Railroad Co., 250 Mo. 46, 156 S. W. 684; Union Dry Goods Co. v. Georgia Pub. Serv. Corp., 248 U. S. 372. 39 Sup. Ct. 117, 63 L. Ed. 309, 9 A. L. R. 1420.]

██ ██ Specific application of the doctrine has frequently been made to drainage and other like statutes. In State ex rel. Hausgen v. Allen, supra, 298 Mo. l. c. 456, 250 S. W. l. c. 906, this court said that while the landowners have a large voice in creating and managing drainage districts, nevertheless "the private benefits accruing to the individual landowners (are) purely incidental." In Max v. Barnard-Bolchow Drainage Dist., supra, 326 Mo. l. c. 731, 32 S. W. (2d) l. c. 586, after a review of many authorities it was held "acts of a governmental agency in the proper exercise of the police power of the State, which do not directly encroach upon private property or private rights, though their consequence may impair the use or

enjoyment thereof, are held not to be a taking or damaging" in the constitutional sense and are not compensable, being *damnum absque injuria.*

In Morgan Engineering Co. v. Cache River Drainage Dist., 115 Ark. 437, 172 S. W. 1020, the defendant drainage district was created under a special act passed in 1911 and a contract made with the plaintiff for all engineering services required in planning and constructing the contemplated drainage works, on a percentage basis. The act was repealed in 1913 after the surveying had been done but before construction work had started. One section of the repealing act allowed parties having claims against the district to file them in the county court and recover reasonable compensation for services rendered. The Arkansas Supreme Court held the statute did not impair the obligation of the contract and that the engineering company should recover *proportionately,* for the amount of work actually done at the contract price. The opinion does not discuss the constitutional questions extensively.

In Koshkonong Mud Creek Drainage Dist. v. Bodeman, supra, 197 Wis. 261, 221 N. W. 864, the appellant drainage district had been formed, ditches dug, bonds issued and paid. Certain of the landowners then filed a petition for the disorganization of the district, as the statute of Wisconsin permitted them to do. The district had a contract with an adjacent district whereby a connecting ditch had been excavated by the latter but to be maintained by the appellant district. Objection to the dissolution was made on constitutional grounds invoking the Fifth and Fourteenth Amendments to the Constitution of the United States and various sections of the Wisconsin Constitution which are sufficiently similar to the cited provisions of our Missouri Constitution to raise substantially the same questions. The Wisconsin court said:

"It is further urged that persons joining in the creation of the district, either as voluntary petitioners or otherwise, became clothed with certain property rights in connection with the assessments made, money paid, and work done and benefits resulting to the property involved, and that such property rights cannot thereafter be destroyed by any dissolution proceedings.

"We know of no recognized theory in the law upon which it can be said that in the exercise of its police power, within the field of which it is conceded these are, the State confers upon persons, directly or indirectly affected thereby, a property right to have a perpetual continuing of such particular police power or any right to object to the withdrawal of such prior particular exercise of that power except upon compensation. To uphold appellants' contention in this regard, however, would be to overlook the plain and wide distinction repeatedly declared to exist between that which is done under the

legislative power of eminent domain and that which is done in the exercise of its police power.''

Speaking to the same question, as bearing on the alteration or dissolution of municipal corporation, the Supreme Court of the United States said in Hunter v. City of Pittsburg, 207 U. S. 161, 178-9, 28 Sup. Ct. 40, 52 L. Ed. 151, 159:

''Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. . . . Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest.''

The relators have cited a great number of authorities from this and other jurisdictions on the general propositions involved but few if any of them are in point on the facts and essential law of this case.

The decision most nearly in point is McGhee v. Walsh, 249 Mo. 266, 279, 287, 155 S. W. 445, 447, 450. There, this court had in judgment certain tax bills issued in 1909 under the then Kansas City charter, which permitted the building of a sewer in a part of a district and not serving a whole district, although benefit assessments were levied against the entire district to pay for it. The theory was that later when other sewers were built in the other parts of the district, all the land would again be assessed to pay for them, thus equalizing the burden. The contesting property owners maintained the issuance of tax bills against their land to pay for a sewer not serving it would be unconstitutional but this court held the provisions of the charter constituted a ''solemn promise'' and gave these landowners a ''*vested right* to reciprocal contribution.''

But such is not the situation in the instant case. No sewers have been built. No benefit assessments for building sewers have been levied against the relators' land. True, the commissioners made an assessment of benefits against the land in the district and filed a report, but the exceptions thereto had not been heard and determined and the report confirmed by the circuit court before the sewer law was repealed. Nothing has been exacted of the landowners except the level tax of ten cents per square and the further like tax of eight cents per square.

These taxes gave the landowners no vested rights. The law provided them to pay the initial organization expenses of the district whether sewers were built or not. [Houck v. Little River Drainage District, supra, 248 Mo. 373, 154 S. W. 739, 239 U. S. 254, 265, 36 Sup. Ct. 58, 60 L. Ed. 266.] Relators argue the 1927 law, under which the taxes were levied, required the sewer plan to be executed and the sewers built unless the circuit court should determine after a full hearing that the estimated cost exceeds the benefits, citing In re Yellow Creek Drainage Dist. (Mo. Div. 1), 240 S. W. 203; and they contend this right to a hearing and adjudication on the commissioners' report and to have the sewers built if that adjudication permitted, was a vested right.

In our opinion this contention is unsound. Relators' right to have the sewers built was at most *contingent*. By the 1927 law the General Assembly in effect determined and declared the general scheme of building sewers provided for therein would promote the public welfare; but provision was further made in the law whereby the circuit court should ascertain in each particular case whether the interest of the landowners would be served—that is, whether the benefits would exceed the cost—and if they would not the project was to be abandoned, notwithstanding the initial level tax had been or was to be levied. In so doing the circuit court would act as a legislative agent, In re Birmingham Drainage District, supra, 274 Mo. l. c. 150, 202 S. W. l. c. 406; or at least discharge a legislative function, Cornet v. St. Louis County (Mo. Div. 1), 240 S. W. 107, 111. This being true, is it not clear that when the paramount authority, the General Assembly, declared by the repealing act of 1931 the whole general scheme of sewer building no longer advanced the public welfare, the effect was the same as if its agent, the circuit court, had made a like determination in this particular case. The only rights the relators had, growing out of the levy of the uniform tax, were contingent on and subject to such exercise of the police power as the General Assembly *or* its authorized agent reasonably might make. We rule this contention and all others made under this head, against the relators.

II. It is further asserted the 1931 repealing act contravenes Article III of the State Constitution, in that the General Assembly has attempted by it to usurp functions wholly judicial: that is to say, after the Circuit Court of St. Louis County had incorporated the Wellston Sewer District under the 1927 law, and in effect lawfully decreed the public interest would be served thereby, the Legislature by the act of 1931 assumed to pass on that same question and to disincorporate or dissolve the district by a repealer expressly making the effect thereof "the same as if the circuit court had . . . .

found that the estimated costs of works and improvements exceed the estimated benefits."

This contention is unsound. The original decree of incorporation was, so to speak, only interlocutory or preliminary. Speaking of a drainage act drawn along the same lines, this court said the initial proceedings were "purely experimental" and the incorporation "tentative," Squaw Creek Drainage District v. Turney, 235 Mo. 80, 95, 98, 138 S. W. 12, 17. In addition to that the question of public welfare was and remained, as we have shown, a legislative not a judicial question at least until the district was finally organized. See, also, Honey Creek Drainage Dist. v. Farm City Inv. Co., supra, 326 Mo. l. c. 750, 32 S. W. (2d) l. c. 757.

III. Relators contend the repealing act of 1931 offends against Article IV, Section 28 of the State Constitution in that the subject matter is not clearly expressed in the title. The title is:

"An Act to repeal all of Sections 11031 to 11071. inclusive, Revised Statutes of Missouri, 1929, being all of chapter 65, 'with a saving clause relating to the payment of outstanding costs, obligations and liabilities of sewer districts.'"

In their argument relators say the title did not inform the Legislature what was the purpose of the act, "nor what calamity it would visit upon the people in respect to their contracts," vested rights and the public health and welfare. But it will be seen the title did refer by number and chapter to the statutes repealed; and it gave the substance of the saving proviso. This was sufficient. [State v. Miner, 233 Mo. 312, 135 S. W. 483.] It was unnecessary either in the body or title to make any reference to the public welfare. [Koshkonong Mud Creek Drainage District v. Bodeman, supra, 197 Wis. l. c. 266, 221 N. W. 864.]

IV. There is a further contention that the 1931 act, though purporting to be a repeal of the 1927 law, was in effect an amendment thereof; and that it violates Article IV, Section 34 of the Constitution because it failed to set out the amendatory matter and then to print the whole law as amended, in obedience to the requirements of that section. The exact complaint made by relators in the argument in their brief is that the 1931 law "says it repeals and then. in the body of the section, specifically declares all of its (the 1927 law's) provisions shall remain in full force and effect; and also provides exceptions and conditions." This does not make the 1931 law an amendment of the 1927 law, but amounts only to a declaration as to when and to what extent the 1931 law shall take effect. As stated in 59 Corpus Juris, section 674, page 1140, "the time at which a particular statute shall become effective may be specified by an exception or

proviso therein," citing State ex rel. v. Black, 199 Ala. 321, 330, 74 So. 387. We are not without authority in this State on the question, State ex rel. Compton v. Chariton Drainage Dist., 192 Mo. 517, 521, 90 S. W. 722, 723; State ex rel. Kinder v. Inter-River Drainage Dist., 296 Mo. 320, 329, 246 S. W. 282, 284. The latter case dealt with Section 62 of Laws 1913, l. c. 266, which gave drainage district theretofore formed the *option* of proceeding either under the repealed or the new law.

V. Complaint is made that the Law of 1931 is local and special, and that it therefore conflicts with Subdivisions 1, 32 and 33 of Section 53, Article IV of the State Constitution. As against these same objections it was held in State ex inf. Atty.-Gen. v. Curtis, supra, 319 Mo. l. c. 334, 4 S. W. (2d) l. c. 473, that the sewer district act of 1927 was not local and special, but general. If this be true, as was unquestionably demonstrated in that case, then it necessarily follows the repeal of the law is not local or special. Neither can it be contended that because the repealing statute contains a saving clause applicable to outstanding costs, obligations and liabilities of sewer districts, the law is local and special. This part of the statute is in terms made applicable to *all* sewer districts formed under the 1927 law, and that law was to operate in any county then or thereafter having a population of 75,000 inhabitants or more. Similar savings clauses have appeared in drainage laws frequently during the past thirty years. The assignment is obviously without merit.

VI. Finally it is contended the 1931 repealing statute is violative of Sections 3 and 10 of Article X of the Constitution because it contemplates the levy and use of the uniform tax authorized by the 1927 law for the dissolution of the sewer district, which relators assert is not a public but a local purpose. These objections have been sufficiently covered by what has already been said in this opinion, but a more sweeping and conclusive answer is that the constitutional provisions invoked do not apply to such taxes, because they are special taxes in the nature of benefit assessments. [State ex inf. Atty.-Gen. v. Curtis, supra, 319 Mo. l. c. 334, 4 S. W. (2d) l. c. 473.]

VII. There is a final assignment that the 1931 law is so vague and indefinite as to be incapable of enforcement. We think not. The act consists of one paragraph containing only 22 lines. Its brevity alone might not free it of ambiguity, but it is not ambiguous, at least no more so than many valid statutes, as the decisions of this court will attest. The repealing law is constitutional. We do not attempt to classify the costs, obligations and liabilities which are or constitutionally must be saved from extinction by it, but we do hold

568

the relators have no vested or other rights which make the repeal of the 1927 law inoperative as to them. The alternative writ of mandamus heretofore issued is therefore quashed. All concur.