State of Missouri at the Relation of Edward Hotchkiss, Meredith C. Jones, R. D. Kercheval, Charles A. Stix and James F. Quigg, Relators, v. Lemay Ferry Sewer District of St. Louis County, Liquidator of said Sewer District, Collector of the Revenue in and for St. Louis County, Recorder of Deeds in and for St. Louis County, and William H. Tegethoff as Liquidator of Said District; W. J. Donworth, Recorder of Deeds in and for St. Louis County, and Willis Benson, as Collector of the Revenue as Aforesaid.—92 S. W. (2d) 704.

Court en Banc, March 18, 1936.

654

*Charles Claflin Allen, Jr.,* and *Williams, Nelson & English* for relators.

656

*George Barnett* for Lemay Ferry Sewer District of St. Louis County, and William H. Tegethoff, as Liquidator of Said District.

*Walter Wehrle* for Willis Benson, Collector of Revenue for St. Louis County.

*David H. Robertson, amicus curiae.*

*Christy M. Farrar, amicus curiae.*

*Chauncey H. Clarke, amicus curiae.*

*Edward L. Wiese, amicus curiae.*

FRANK, J.—Original proceeding by mandamus to compel the levy and collection of additional uniform taxes against the lands in Lemay Ferry Sewer District of St. Louis County, Missouri, to provide funds to pay certain outstanding warrants of the district.

Respondent Donworth filed no return. The other respondents filed returns in the nature of demurrers to the petition on the ground that the petition fails to state facts sufficient to constitute a cause of action in that it appears from the face of the petition that the sewer district had theretofore exhausted its taxing power and for that reason the liquidator had no authority to levy an additional tax.

The petition alleges, in substance, that respondent sewer district was organized and incorporated under the provisions of Chapter 65, Revised Statutes of Missouri 1929. The board of supervisors proceeded in accordance with the statute to appoint engineers and incur certain expenses in the organization and in the preliminary work of the district, including court costs, the salary of the secretary of the board of supervisors, the *per diem* of the commissioners, office rent, and the fees of the title company which furnished abstracts and title certificates.

For these expenses the board of supervisors issued warrants on the treasurer of the district in the form provided by Section 11052, Revised Statutes 1929. These warrants were duly presented to the treasurer, who endorsed thereon the lack of funds in the treasury, pursuant to the provisions of Section 11057, Revised Statutes 1929. Respondents are the holders of warrants for these expenses.

In this district the board of supervisors made a levy of ten cents

per square of one hundred square feet on all lands within the district, in accordance with the provisions of Section 11037, Revised Statutes 1929. A substantial part of this tax has been collected, but it is insufficient to pay the outstanding warrants held by relators and others.

At the regular session of 1931, the Legislature passed an act (Laws 1931, p. 355) repealing Chapter 65, Revised Statutes 1929, the law under which the district was organized, with a saving clause, providing that all the provisions of the law should continue in force for the purpose of paying all outstanding and *lawfully incurred* costs, obligations and liabilities of all sewer districts and providing that no additional expense should be incurred except that necessary to pay the costs, obligations and liabilities theretofore incurred, and providing that the effect of the act should be equivalent to a finding by the circuit court under the provisions of Section 11062 that the estimated cost of works and improvements of each district exceeded the estimated benefits.

At the special session of the Legislature 1933-1934, an act was duly passed terminating the rights and duties of boards of supervisors of these sewer districts and providing for the appointment of an official liquidator for the same. Respondent Tegethoff was appointed by the Governor and assumed his duties and succeeded to all the rights, powers and duties of the board of supervisors of this district.

Respondent Tegethoff has refused to make any additional levy to pay the warrants held by relators and other costs of winding up the district, upon the ground that the district exhausted its power when it made the ten-cent levy, and for that reason he has no power now even upon the dissolution of the district to make any further levy.

No sewer was built in the district in question. The law under which the district was organized was repealed. [Laws 1931, p. 355.] By express provision of the repealing act, the repeal amounted to a dissolution of the district. The sole question presented by the instant proceeding is whether or not, upon dissolution of the district, an additional uniform tax can be levied under the provision of Section 11062, Revised Statutes 1929, when the preliminary expenses incurred by the district prior to its dissolution exceeds the original ten-cent levy theretofore made under Section 11037, Revised Statutes 1929. There is no question about the authority of the liquidator to make the additional levy if such a levy is authorized by statute. The question presented involves the proper construction of Sections 11037 and 11062, Revised Statutes 1929.

The pertinent parts of Section 11037 read as follows:

"The board of supervisors of any sewerage district organized under the provisions of this chapter may, as soon as appointed and qualified, levy a uniform tax of not more than ten cents per square

of one hundred square feet upon all the lands within such district, to be used for the purpose of paying expenses incurred and to be incurred in organizing the district, in making surveys of the same, in assessing benefits and damages, and in paying other expenses necessary to be incurred prior to the time when the said board shall be empowered by subsequent provisions of this chapter to provide funds with which to pay the total cost of works and improvements of the district.''

The presumption is that the Legislature had a purpose in enacting Section 11037 and intended that it should have life and operative effect. It is argued that the purpose of the section was merely to provide a working fund so that expenses might be met as they were incurred, to the extent of the ten-cent levy, but that it was not intended to limit the expenses to the amount of that levy. The section will not admit of the construction contended for. It provides that the board of supervisors *may* levy *not more* than ten cents per square of one hundred square feet. It further provides that the ten-cent levy shall be used *for the purpose of paying expenses incurred and to be incurred* ''. . . prior to the time when the said board shall be empowered by subsequent provisions of this chapter to provide funds with which to pay the total cost of works and improvements of the district.'' In other words, this section provides that the ten-cent levy shall be used for the purpose of paying expenses incurred and to be incurred over a definite and fixed period of time, and that period of time, under the language of the statute, dates from the organization of the district to the time when the construction of the sewer is authorized, or the district is dissolved. Expenses incurred and to be incurred necessarily mean the entire expense. Since this section provides that the ten-cent levy shall be used *for the purpose of paying such expenses*, there is no room for argument that such expenses, or any part of them, should be paid from any other levy. There is no doubt but what Section 11037, standing alone, limits the levy for preliminary expenses to the authorized maximum levy of ten cents per square of one hundred square feet.

This brings us to a consideration of Section 11062 upon which relators rely as authorizing additional levies above the ten-cent levy authorized by Section 11037. The pertinent part of Section 11062 reads as follows:

''If after determining the objections made to the commissioners' report, the court shall find that the estimated costs of works and improvements as reported by the board of commissioners, or as amended by the court exceed the estimated benefits, the court shall then render its decree declaring the incorporation of the district to be dissolved as soon as all costs incurred, which shall include court costs and all obligations and expenses incurred in behalf of the district by the

board of supervisors, shall have been paid, and if the uniform tax levied under the provisions of this chapter be found insufficient to pay all such costs, the board of supervisors shall make such additional uniform tax levies as will be necessary to pay such deficiency.''

A literal construction of Section 11062, standing alone, would destroy the limitation placed on the levy by Section 11037, allow the district to incur preliminary expenses in any amount it saw fit, without limit, and, upon dissolution of the district, permit additional levies to be made to pay the outstanding obligations of the district, even though the combined levies be far in excess of the maximum levy of ten cents authorized by Section 11037. It thus appears that when these two sections are considered separately, they appear to be in hopeless conflict. However, as they are parts of the same act, and relate to the same subject matter, they should be read and construed together and both be given force and effect, if by so doing we can effectuate the intention of the Legislature, and at the same time not violate any recognized rule of statutory construction.

As heretofore seen, Section 11037 fixes the maximum levy which can be made for the purpose of paying preliminary expenses incurred and to be incurred, at ten cents per one hundred square feet, but it does not require that the maximum of ten cents per square be levied in the first instance. The Legislature knew that fact. If a district should levy less than the maximum limit of ten cents, then incur expenses in excess of the levy made, but within the authorized limit of ten cents, such deficiency should be paid because incurred within the limit authorized. Evidently the Legislature intended by the enactment of Section 11062 to care for such a deficiency by providing for additional levies within the limit authorized, to pay deficiencies within, but not in excess of such authorized limit. We so construe Section 11062. Such a construction is not only reasonable but it accredits the Legislature with a laudable purpose in enacting both sections and gives to both sections life and operative effect. The presumption is that the Legislature had a purpose in enacting both sections and intended that both should be effective. To give the sections the construction contended for by relators would emasculate Section 11037 by removing the limit placed on the levy by that section, and make possible the incurring of useless and unnecessary expenses which would finally result in the imposition of unjust and unfair tax burdens.

Relators make the further contention that the language of the repealing act shows that the Legislature had in mind that additional levies might be necessary. The part of the act relied upon reads as follows:

''*Provided*, that all of the provisions of the law hereby repealed shall continue in force for the purpose of paying all outstanding

and lawfully incurred costs, obligations or liabilities of all sewer districts.''

It will be noted that this statute continues the existence of the district for the purpose of paying *lawfully incurred* obligations. Obligations incurred in excess of the authorized maximum levy of ten cents per square of one hundred square feet are not lawfully incurred obligations, and therefore, are not the character of obligations referred to in the repealing act. The district in question has made the maximum levy of ten cents per one hundred square feet. Relators by this proceeding seek to compel an additional levy in excess of the ten-cent levy heretofore made.

Relators call attention to the provisions of Section 11040 and 11044. Section 11040 provides, among other things, the following:

''By and with the advice of the engineer of the district they shall also estimate the cost of the sewers, outlets and other sewer improvements set out in the sewer plans, which estimate shall include the cost of property required for right of way, outlets and other sewer improvements, and the probable expense of organization and administration as estimated by the board of supervisors, and shall tabulate the same.''

Section 11044 provides that after it is determined from the commissioners' report that a sewer is to be built, and after the list of land with assessed benefits has been filed, a tax levy shall be made of such portion of the benefits and in proportion thereto ''as may be found necessary by the board of supervisors to pay the cost of the completion of the proposed works and improvements, as shown in the sewerage plan and in carrying out the objects of the district.''

It is argued that the parts of the two sections last above quoted when read together clearly show that if the total cost does not exceed the benefits, and if the sewers are to be built then all of the administration costs over and above the ten-cent levy, as well as the construction of the sewers, will be paid in proportion to the benefits against each lot rather than on an area basis, but no limitation is placed by either of these sections upon the amounts so to be expended.

We do not agree with relators' contention. The two sections of the statute to which relator calls attention not only do not support their contention but conclusively show that there is no merit in the contention made.

It is true that the first section to which attention is called, Section 11040, provides that the commissioners shall include in their estimate of costs, the probable expense of organization. The organization expense which by express provision of Section 11037 is to be paid out of the preliminary levy of not to exceed ten cents per one hundred square feet, is a part of the total cost of the project. The only purpose of requiring the commissioners to include organization cost in

their estimate of cost is to place the circuit court in a position to determine whether or not the estimated total cost of the project would exceed the total benefits. It clearly appears from the next section to which attention is called, Section 11044, that if the sewer is to be constructed, organization cost is not to be included in the levy to be made to pay the cost of construction. That section provides that the board of supervisors shall make a levy sufficient to pay *the cost of the completion of the proposed works and improvements* as shown in the sewerage plan and in carrying out the objects of the district. The completion of the work means to finish what was theretofore begun. Necessarily, therefore a tax to pay the cost of the completion of the works and improvements does not include the preliminary work theretofore done and paid for by a maximum levy of ten cents authorized by Section 11037 for that purpose. Again, the levy authorized by Section 11044 is to pay for the completion of the works and improvements, and not to pay for the preliminary surveys and attendant expenses, for the purpose of determining whether or not the improvement should be made.

Appellants rely upon the case of State ex rel. Becker v. Wellston Sewer District of St. Louis County, 332 Mo. 547, 58 S. W. (2d) 988. The Wellston Sewer District and the district involved in the instant action were both organized under provisions of Chapter 65, Revised Statutes 1929. After the Wellston Sewer District was incorporated, and prior to the repeal of the law under which it was incorporated, it did certain preliminary work in the preparation of a sewer plan and necessarily incurred preliminary and administration expenses for which preliminary tax levies were made. After the repeal of the law under which the district was incorporated, the board of supervisors refused to go further. Certain property owners in the district brought mandamus to compel the board of supervisors to proceed with the sewer plan, contending the organization had progressed to a point such as gave them a vested right to have the sewer project carried out, and asserting that such right was violated by the repealing statute. The sole question in that case was whether the board of supervisors could be compelled by mandamus to proceed with the sewer project and construct the sewer after the law providing for the incorporation of the district and the construction of the sewer had been repealed. The question of the authority of the board of supervisors to levy for preliminary or organization expense, more than the maximum of ten cents per square authorized by Section 11037, was not in that case. It is true the opinion in that case contains language, by way of recital, which indicates that the board did have such power, but the opinion does not discuss the question. We do not think the writer either intended to or did decide that question.

No case has been cited in the briefs of either party deciding the question presented in this case. There is a decision of the Kansas City Court of Appeals which decides the question on similar statutes in a drainage act. [Macon County Levee District No. 1 v. Goodson, 22 S. W. (2d) 651, 652.] In that case the statute, Section 4608, Revised Statutes 1919, provided that the board of supervisors should levy a uniform tax of not more than twenty-five cents per acre to be used for the purpose of paying expenses incurred and to be incurred in organizing the district, making surveys, etc. Pursuant to this statute the board made a levy of twenty-five cents per acre. Later, upon dissolution of the district, it was found that the twenty-five-cent levy theretofore made was not sufficient to pay the costs and obligations incurred by the board of supervisors. Section 4633, Revised Statutes 1919, provided that if upon dissolution of the district it was found that the levy theretofore made was insufficient to pay costs and obligations of the district, the board should make additional levies necessary to pay the deficiency. Pursuant to this session, the board of supervisors made an additional levy of fifty cents per acre. Defendant in the cited case resisted the payment of the additional levy against his land. He lost in the court below and appealed. The Court of Appeals, without discussing the question, said, "The statutory authority to levy the additional tax is quite plain," and upheld the levy. The decision is unsound and should be and is overruled.

Our conclusion is that the board of supervisors cannot be compelled to make an additional tax levy in excess of the maximum levy of ten cents per square authorized by Section 11037, Revised Statutes 1929. The alternative writ of mandamus heretofore issued should be quashed. It is so ordered.

*Gantt. Collet, Leedy* and *Tipton, JJ.*, concur; *Ellison, C. J.*, dissents in separate opinion in which *Hays, J.*, concurs.

### DISSENTING OPINION.

ELLISON, C. J.—I respectfully dissent from the principal opinion. The respondent sewer district, organized under Chapter 65, Revised Statutes 1929, incurred certain preliminary expenses in the process of organization. It levied a flat or uniform tax of ten cents per square of one hundred square feet upon all the land in the district to pay them, as authorized by Section 11037 in said chapter. Thereafter the district was dissolved by Laws 1931, page 355, which repealed Chapter 65 but continued the law in effect so far as necessary to liquidate sewer districts already formed thereunder. The ten-cent

tax levy proved insufficient to meet all the aforesaid preliminary expenses.

The relators hold warrants of the district issued in payment of certain of these preliminary expenses which remain unpaid. They seek by mandamus to compel the levy and collection of an additional uniform tax sufficient to pay their warrants. There is no dispute as to the good faith or inherent legality of their claims. The sole question in the case is whether the liquidator of the district (appointed under Laws 1933-1934, Ex. Sess., p. 117) has authority under Section 11062 of said chapter to levy another uniform tax, in addition to the ten-cent levy already made, to pay these warrants. The principal opinion holds he has no such authority on the theory that Section 11037 forbids the levy of more than ten cents per square of one hundred square feet, in the aggregate, to pay preliminary expenses; and that any other sections in the chapter which may appear to authorize additional or supplemental levies beyond that amount for such purposes must yield to the construction thus put by the opinion on Section 11037.

 It will be remembered that Chapter 65, Revised Statutes 1929, containing forty-one sections, provided for the incorporation of certain sewer districts by decree of the circuit court. Special benefit assessments were to be levied upon all the land in the district to pay the cost of constructing the sewer improvements or to retire bonds issued for that purpose. But before that stage of the project had been reached many steps necessarily had to be taken and the district financially obligated therefor. First came the proceedings to obtain a decree of incorporation—which the landowners could resist. Then supervisors and a chief engineer were appointed. Surveys were required to be made to obtain data for a sewer plan, which, of course, had to be formulated. Real estate titles had to be examined to ascertain who were the owners of the land to be assessed. Next, the value of all the land in the district was to be assessed by commissioners and a special benefit assessment levied against each tract according to the benefits received from the improvement. The landowners were permitted to file exceptions contesting these assessments in the circuit court and expensive court proceedings usually followed. When all this had been done if the aggregate assessed benefits approved by the court exceeded the estimated cost of construction the project was to proceed; if the benefits were less than the cost of construction the project was to be abandoned and the corporation dissolved. All these successive steps, entailing substantial financial commitments, had to be taken before it could be known whether the project would and could be consummated; and before any of the special benefit assessment taxes could be collected (if at all).

To provide for these preliminary expenses Section 11037 was enacted, as follows:

"The board of supervisors of any sewerage district organized under the provisions of this chapter may, as soon as appointed and qualified, levy a uniform tax of not more than ten cents per square of one hundred square feet upon all the lands within such district, to be used for the purpose of paying expenses incurred and to be incurred in organizing the district, in making surveys of the same, in assessing benefits and damages, and in paying other expenses necessary to be incurred prior to the time when the said board shall be empowered by subsequent provisions of this chapter to provide funds with which to pay the total cost of works and improvements of the district. . . . In case the sum received from such assessment exceeds the total cost of items for which the same has been levied, the surplus shall be placed in the general fund of the district or used to pay cost of construction: *Provided*, that if the corporation of the district be dissolved, as provided for herein, the amount of the surplus, if any, shall be prorated and refunded to the landowners paying the same."

The principal opinion, as will be seen by reference thereto, stresses certain words in the section and by so doing construes it as if it read: the board of supervisors may levy not more than ten cents per square of one hundred square feet in the aggregate for the purpose of paying expenses incurred and to be incurred from the organization of the district to the time when the construction of the sewer is authorized or the district is dissolved; and the funds used in paying said expenses can come from no other source than said uniform tax. But in so holding the opinion ignores what I think is the controlling provision of the section, in view of the whole scheme of the chapter. As already pointed out a considerable preliminary expense, varying in amount with the situation in the particular district, must be incurred *in advance*. This being true, Section 11037 by a qualifying phrase at the beginning of the section provides that the board of supervisors *"may, as soon as appointed and qualified,"* levy and collect said uniform tax of ten cents per square of one hundred square feet for the purpose of paying these expenses. (All italics in quotations from the statute are mine.)

But nowhere does the section provide, as I read it, that the preliminary expenses shall not exceed the ten-cent levy. It merely says the initial flat levy shall not exceed ten cents per square; and that it is to be used in paying preliminary expenses incurred and to be incurred—it does not say *the* preliminary expenses or *all* preliminary expenses. And it further provides the levy may be made to pay expenses incurred "prior to the time when the said board shall be empowered by subsequent provisions of this chapter to provide funds with which to pay *the total cost of* works and improvement of the dis-

trict.'' Certainly the preliminary expenses for organization, surveys, title work, office rent, salaries, fees, court costs, attorney fees and the like are a part of the total cost of construction where the project is consummated and the sewers built. [19 C. J., sec. 217, p. 719.] Furthermore, toward the end the section provides that *"in case,"* the sum received from the uniform levy exceeds the preliminary expenses the surplus shall be used by the district, or be refunded to landowners if the district be dissolved. By implication this contemplates the possibility of the opposite contingency, namely, that the proceeds from the levy may *not* exceed the preliminary expenses, or in other words, that the latter may overrun the former. It can hardly be thought the Legislature had in mind nothing but that the amount thus raised in advance to pay these uncertain preliminary expenses would either only exceed them or exactly equal them, and that it could not underrun them.

█ Further, Section 11040 provides that when the commissioners appointed to assess the benefits accruing to the land in the district as a basis for the special benefit assessments prepare their report, they shall make an estimate of the cost of the sewer improvements which shall include an estimate of ''the probable expense of organization and administration.'' Under Section 11042 this estimate is to be used by the court in determining whether ''the estimated cost of constructing the improvement contemplated in 'the sewer plan' is less than the benefits assessed. . . .'' In other words, the preliminary expenses are to be treated as a part of the whole cost of construction. And Section 11044, which provides for the levy of special taxes against the benefit assessments, says the levy shall be ''of such portion of said benefits . . . as may be found necessary by the board of supervisors to pay the cost of the completion of the proposed works and improvements, as shown in the sewerage plan and in carrying out the objects of the district, plus ten per centum of said total amount for emergency.'' The principal opinion holds these sections do not disclose a legislative intent that the special benefit assessments collected may be used to pay preliminary expenses when the uniform advance levy will not do it, and that the words ''cost of construction'' and other similar expressions in the several sections refer to expenses incurred after the construction of the sewer is authorized, and exclude expenses incurred prior to that time. I submit the Legislature cannot be thought to have had the intention that any expense honestly and necessarily incurred within the benefit assessment, in building the sewer improvement in accordance with the sewer plan and in ''carrying out the objects of the district'' should remain unpaid; and that when Section 11044 provides for the levy of special benefit taxes ''to pay the cost of the completion of the proposed works and improvements,'' it means the cost of bringing them to completion.

What good reason could the Legislature have had for desiring to provide that all preliminary expenses of the district should be paid only out of the ten-cent uniform advance levy? Why fix an arbitrary limit at that figure? We know these expenses may greatly vary. In a district composed of large tracts held by comparatively few owners, with a favorable terrain, the engineering work would be far simpler and the number of exceptions to benefit assessments, court trials, sewer lines, etc., would be relatively small. But in a district of large population and difficult terrain containing city and town streets, and subdivisions and lots with many owners the work and expense would be enormously increased. Did the Legislature mean to say no sewer district could be established when the area thereof was too small to provide a fund, derived from a ten-cent uniform tax levy, sufficient to meet the preliminary expenses no matter how valuable and thickly populated the area might be, and how great the benefits? No such limitation is apparent in the law. Plainly, the purpose in providing for an advance uniform levy of ten cents on an area, not a benefit, basis was to furnish a working fund in the beginning which would be available as far as it would go until the benefits could be assessed and special taxes levied and collected.

No doubt the section meant if the project was carried out no levy on an area basis in excess of ten cents per square could be made to pay preliminary expenses, for in that case the benefit assessment later collected would be available to meet any deficiency. That is reasonable. Taxation on an area basis is not as equitable as taxation on a benefit basis. Equal areas of land in a district might vary greatly in value and in the amount of benefits received. The initial uniform tax was simply an expedient made necessary because many preliminary expenses had to be incurred and paid before the machinery can be put in motion to raise funds on a benefit basis. But that is vastly different from saying, as the principal opinion does say, that *no* preliminary expenses could be incurred except within the uniform tax of ten cents per square, and that no part of the funds produced by the benefit assessment could be used for that purpose.

It is argued the construction I am contending for would have permitted the board of supervisors to incur preliminary expenses without limit; but such is not the fact. As already pointed out, by force of Sections 11042 and 11044 the estimated preliminary expenses were included in estimating the cost of construction and the whole was required to be within the total benefit assessment. The work could not go on without these preliminary outlays—if they were reasonable and necessary, as is conceded for the purposes of this case. The landowners lost nothing.

The foregoing discussion about whether preliminary expenses could be paid out of benefit assessments if the advance uniform levy of

ten cents per square under Section 11037 proved inadequate, is really beside the point on the precise question presented by the record. It presupposes authorization and construction of the sewer improvement whereas in this case the project was abandoned. But it has its bearing. For if the law permitted the preliminary expenses to exceed the ten-cent uniform tax levy when the project went forward, and the excess could be paid out of the fund raised by special assessment, the same commitments also could be made even though the project was later abandoned, because the supervisors could not tell at the time the expenses were incurred which eventuality will follow. Turning now to that precise question.

■ Section 11037 expressly provided only for contingencies where the preliminary expenses were *less* than the amount of the uniform tax levy. It was said that in such event if the sewer project were carried out the surplus should go into the general fund or be used to pay costs of construction; and if the district were dissolved it should be refunded to the landowners *pro rata.* I have endeavored to show in the preceding paragraphs that the section by plain implication, in connection with other sections, further provided that if the preliminary expenses *exceeded* the amount produced by the uniform tax levy and the project was prosecuted to completion, the difference could be paid out of the benefit assessment. But it was left to Section 11062 to declare plainly what should be done if the preliminary expenses exceeded the uniform tax and the district was dissolved. That section said that if the court found the estimated cost of construction would exceed the estimated benefits, ''the court shall then render its decree declaring the incorporation of the district to be dissolved as soon as all costs incurred, which shall include court costs and all obligations and expenses incurred in behalf of the district by the board of supervisors, shall have been paid, and if the uniform tax levied under the provisions of this chapter be found insufficient to pay all such costs, the board of supervisors shall make such additional uniform tax levies as will be necessary to pay such deficiency. . . .''

What could be clearer? As a condition precedent to dissolution, *all costs incurred,* including court costs and *all obligations and expenses incurred in behalf of the district by the board of supervisors* must be paid. And not only that: the section says *if the uniform tax levied* under the provisions of the chapter *be found insufficient to pay all such costs,* the board of supervisors *shall make such additional uniform tax levies as will be necessary to pay such deficiency.* It must be kept in mind that this section, 11062, deals with a different situation from that contemplated by Section 11037. The latter faced the prospect that the sewer improvement might and probably would be constructed, and benefit assessments might and probably would be levied. But Section 11062 provides alone for situations where the

district is to be dissolved and no benefit assessments can be collected. There is no alternative except to require the levy of additional uniform taxes sufficient to liquidate the debts of the district.

I submit that the principal opinion nullifies the unequivocal provisions of Section 11062, which can only mean what they plainly say. The reasoning by which this is done starts with the false premise that Section 11037, supra, forbids altogether the levy of a uniform tax or taxes exceeding ten cents per square in the aggregate. It is then declared that Section 11062, above, conflicts with Section 11037 as thus interpreted, and to harmonize that conflict the opinion construes Section 11062 as meaning the board of supervisors may make the additional uniform levies directed therein *up to a maximum* of ten cents per square of one hundred square feet *if* the uniform levy made in the beginning was below that figure. This does violence to both clauses of the quoted part of Section 11062. The statute says without qualification that *all* costs, obligations and expenses of the district shall be paid; the opinion says only so much of them shall be paid as can be satisfied out of a levy of ten cents per square in the aggregate. The statute says further without qualification that if the uniform levy made in advance (which can be ten cents under Sec. 11037) proves insufficient to satisfy all the obligations of the district, additional uniform levies may be made to pay the deficiency; the opinion says if the original uniform levy was *less than ten cents*, the deficiency may be made up so far as an additional levy up to a maximum of ten cents in the aggregate will do it. The statute forbids dissolution of the district until its debts are paid; the opinion permits it to pass out of existence leaving creditors unsatisfied.

Now, reverting to the proper construction of Section 11037, as applied to situations where the district is dissolved. The understanding of the bench and bar ever since Chapter 65 was enacted has been that it meant only the *advance* uniform tax levied by the board of supervisors for preliminary expenses should not exceed ten cents per square; not that a uniform tax in excess of that figure *never* could be levied. In State ex rel. Becker v. Wellston Sewer District, 332 Mo. 547, 557, 58 S. W. (2d) 988, 990, while the point was not up for decision, the facts were that an original uniform tax of ten cents per square and a later similar tax of eight cents had been levied to pay preliminary expenses of a sewer district dissolved by the 1931 law. This court en banc said: ''To defray these preliminary expenses the board of supervisors was authorized to levy a uniform initial tax of ten cents per square of 100 square feet, and a further uniform tax if necessary for that purpose.'' In State ex rel. Stoecker v. Jennings Sewer Dist., 333 Mo. 900, 906, 63 S. W. (2d) 133, 135, though it was contended a ten-cent uniform tax would be insufficient to pay all outstanding warrants of a dissolved sewer district for preliminary

expenses this court held: "The board of supervisors ought to levy a uniform tax upon all of the lands of the district in order that funds may be obtained for the payment of all lawful claims existing against the district." And as pointed out in the principal opinion, in passing on practically identical drainage statutes, the Kansas City Court of Appeals said in Macon County Levee District No. 1 v. Goodson, 224 Mo. App. 131, 133, 22 S. W. (2d) 651, 652, that "the statutory authority to levy the additional tax is quite plain." The substance of the two sections was set out in the opinion in connection with and preceding this statement.

But concede for the purpose of discussion that Section 11037, either standing alone or in connection with Sections 11040, 11042 and 11044, does not clearly bear the construction I have put upon it; and grant that it is ambiguous or equivocal. The principal opinion concedes that Section 11062, which authorizes the levy of additional uniform taxes to pay preliminary expenses on dissolution, is clear; and it appears later in the chapter and provides specially what shall be done about discharging the obligations of sewer districts when they are dissolved because the estimated cost exceeds the benefits. The rules of statutory construction applying in such a situation are as follows:

"The law is well settled that where there is an irreconcilable conflict between two different parts of the same act, as a rule the last in order of position will control unless there is some special reason for holding to the contrary." [State ex rel. Greene County v. Gideon, 273 Mo. 79, 87, 199 S. W. 948, 949.]

"Where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part the particular provisions must govern, unless the statute as a whole clearly shows the contrary intention and they must be given effect notwithstanding the general provision is broad enough to include the subject to which the particular provisions relate." [59 C. J., sec. 596, p. 1000.]

"Where one part of the statute is susceptible of two constructions, and the language of another part is clear and definite, and is consistent with one of such constructions, and opposed to the other, that construction must be adopted which will render all clauses harmonious." [59 C. J., sec. 597, p. 1103.]

So much for the provisions of Chapter 65. The construction here contended for is further supported by the provisions of the repealing act, Laws 1931, page 355. After providing for the repeal of all the sections in the chapter, it adds this proviso:

"*Provided*, that all of the provisions of the law hereby repealed shall continue in force for the purpose of paying all outstanding and lawfully incurred costs, obligations and liabilities of all sewer dis-

tricts, but no additional costs, obligations or liabilities shall be created except such as are necessary to pay such costs, obligations and liabilities heretofore incurred or necessary to the winding up of the affairs of such districts, and the effect of this repeal as to each and every such district shall be the same as if the circuit court had, under the provisions of Section 11062, Revised Statutes of Missouri, 1929, found that the estimated costs of works and improvements exceed the estimated benefits . . .''

This repealing act plainly discloses a legislative intent that sewer districts organized under Chapter 65 shall not be dissolved until their debts are paid. It even provides for the payment of costs, obligations and liabilities incurred in winding up the affairs of such districts after the passage of the act. The proviso does, it is true, authorize the payment only of *lawfully* incurred costs, obligations and liabilities, but that adds nothing to it, because nothing else could have been intended even if that word had been omitted. And necessarily an additional uniform levy would have to be made to take care of these dissolution costs if the preliminary expenses had used up all of the initial uniform levy of ten cents per square.

For the foregoing reasons I respectfully submit that the reasoning and conclusion of the principal opinion are erroneous; and that our alternative writ of mandamus ought to be made peremptory.

*Hays, J.*, concurs.